EL PUEBLO, DEMANDANTE Y APELADO, *v.* GARCÍA, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en causa por injuria y calumnia.

No. 681.—Resuelto en julio 15, 1914.

CALUMNIA — CRÍTICA DE FUNCIONARIOS PÚBLICOS — LIBERTAD DE LA PALABRA — INTERPRETACIÓN LIBERAL DE LAS FRASES CALUMNIOSAS.—Las frases calumniosas que se imputan a un acusado al criticar a funcionarios públicos deben interpretarse en sentido liberal, teniendo en cuenta el interés público y a favor de la libertad de la palabra y del derecho que tiene, todo ciudadano a discutir acerca de los funcionarios públicos y cuestiones de interés general.

ID.—LIBERTAD DE LA PALABRA—INTERPRETACIÓN DE LA LEY.—En la interpretación de la Ley No. 49 sobre calumnia, de marzo 9, 1911, debe tenerse en cuenta la libertad de la palabra garantida por la ley definiendo los derechos del pueblo, de febrero 27, 1902, y el precepto constitucional sobre la misma materia.

ID.—ACCIONES CIVILES POR CALUMNIA—APLICACIÓN DE SUS PRINCIPIOS A CASOS CRIMINALES.—Los principios que rigen las acciones civiles de indemnización de daños y perjuicios por calumnia, por analogía son aplicables a causas criminales por dicho delito.

ID. — EXPRESIÓN CALUMNIOSA — ELEMENTOS NECESARIOS PARA QUE CONSTITUYA DELITO.—La "expresión calumniosa" a que se refiere la sección 3 de la Ley No. 49, de marzo 9, 1911, debe tener, los elementos expresados en las secciones 1 o 2 de la misma ley para que constituya el delito de calumnia.

ID.—EXPRESIÓN CALUMNIOSA—IMPUTACIÓN DE LA COMISIÓN DE UN DELITO— TRADUCCIÓN ERRÓNEA DE LA SECCIÓN 2—RELATO O INFORME.—Para que exista el delito de calumnia de acuerdo con la Ley No. 49, de marzo 9, 1911, es necesario que se impute la comisión de un delito, o que las palabras que se estiman calumniosas sean equivalentes a un "relato" o "informe" que es la verdadera traducción al español de las palabras *"tale"* o *"report"* empleadas en el texto inglés de dicha ley.

ID.—VAGO Y VAGABUNDO—APLICACIÓN DE ESTAS PALABRAS A UN ALCALDE.—El decir públicamente que un alcalde es un vago y vagabundo y que debiera ocuparse de trabajar y de las necesidades de los pobres, no constituye un ' relato" o "informe" en el sentido en que estas palabras se emplean en la sección 2 de la ley de calumnia, ni imputan la comisión de un delito y por tanto no constituyen el delito de calumnia.

INTERPRETACIÓN DE LEY—DISCREPANCIA ENTRE EL TEXTO ORIGINAL INGLÉS Y LA TRADUCCIÓN ESPAÑOLA.—Cuando una ley es de origen americano debe prevalecer el texto original inglés en caso de existir discrepancia entre dicho texto y la traducción española.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogado del apelante: *Sr. Rafael López Landrón.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Se inició esta causa en la Corte Municipal de Vieques a virtud de la siguiente denuncia:

"Yo, Carlos Benítez Castaño, Alcalde Municipal, vecino de Vieques, Puerto Rico, calle de Guzmán Benítez, mayor de edad, formulo denuncia contra Emilio García, por delito de injurias y calumnias' (*misdemeanor*), cometido de la manera siguiente: Que en noviembre 2, 1913, a las 4.30 p. m., más o menos, y en la Plaza del Mercado,

Municipio de Vieques, dentro del Distrito Judicial Municipal de Vieques, Puerto Rico, que forma parte del Distrito Judicial Municipal de Humacao, Puerto Rico, el acusado Emilio García, maliciosa, voluntaria y falsamente y con la intención de causarme deshonra, descrédito y menosprecio, públicamente profirió palabras en contra de mi reputación, tales como 'El Alcalde de este pueblo de Vieques es un vago, es un vagabundo, debiera ocuparse de trabajar y de las necesidades de los pobres.'' Este hecho es contrario a la ley para tal caso hecha y prevista y contra la paz y dignidad del Pueblo de Puerto Rico. Firmado. C. Benítez Castaño. Alcalde Municipal de Vieques. Denunciante.''

Celebrado el juicio *de novo* basado en la misma denuncia ante la Corte de Distrito de Humacao, fué declarado culpable el acusado y condenado a pagar veinte y cinco dólares de multa, o en su defecto a sufrir un día de cárcel por cada dollar que dejare de satisfacer, y al pago de las costas.

El apelante no ha formulado alegato ante esta corte y no consta en los autos ninguna exposición del caso ni pliego de excepciones. Durante la vista de esta apelación casi toda la discusión fué principalmente sobre la significación del lenguaje referido en la denuncia, habiéndose alegado que las palabras contenidas en la mencionada denuncia no deben ser consideradas como calumniosas según el significado y aceptación que general y ordinariamente se da a dichas palabras. También se sostuvo, aunque no se hizo cita alguna de autoridades, que al interpretar la corte la frase en cuestión debe considerarla en un sentido liberal, teniendo en cuenta el interés público y en defensa de la libertad de la palabra así como del derecho que tiene todo ciudadano a discutir sobre los funcionarios públicos y las cuestiones de interés general. Estamos de acuerdo en lo que respecta a esta última indicación aunque según el criterio que hemos formado del caso no es necesario que este tribunal considere con amplitud las diversas significaciones que pudieran o nó darse a las frases que se suponen calumniosas.

La libertad de la palabra está completamente garantida en Puerto Rico por virtud de la sección 3 de una Ley Defi-

niendo Derechos del Pueblo, aprobada en 27 de febrero de 1902, cuya sección es como sigue:

"Sección 3.—No se coartará a nadie la libertad de la palabra, y toda persona tendrá entera libertad para hablar, escribir, o publicar lo que le plazca sobre cualquier asunto, siendo responsable, sin embargo, de todo abuso en que incurra de esa libertad."

No debemos perder de vista este precepto al aplicar a casos como el presente nuestra ley actual para definir y castigar el delito de calumnia, como tampoco el principio constitucional tan respetado siempre y que se ha tratado de conservar en el referido precepto. La injuria y calumnia no constituye un delito en la ley común aunque en algunos Estados, como en Puerto Rico, se han aprobado estatutos según los cuales ciertas imputaciones calumniosas son constitutivas de delito. Sin embargo, los preceptos más generales se refieren aquellas imputaciones por las que se atribuye a una mujer el hecho de no ser pura, y no pueden encontrarse casos que sean pertinentes en los cuales se interprete un estatuto semejante al nuestro. 25 Cyc., 569 y notas; Newell sobre Libelo y Calumnia, página 920, párrafo 30.

Vemos que existe, sin embargo, una gran semejanza en las acciones civiles en que se reclaman daños y perjuicios por injuria y calumnia, y los principios comprendidos en ellas parecen ser aplicables *a fortiori* a un caso criminal. Así, pues, en el caso de *Sillars* v. *Collier*, 6 L. R. A., 680, las palabras proferidas con respecto al demandante fueron las siguientes:

"Siento que el representante de este distrito haya variado de opinión. A veces (sacudiendo la mano en el bolsillo) un cambio de opinión procede del bolsillo."

Después de hacer referencia la Corte a la Constitución de los Estados Unidos y a la de Massachusetts, hace la siguiente cita de los Comentarios de Kent:

"Se considera que la facultad de poder discutir libremente sobre el carácter y conducta de los funcionarios públicos es esencial al ejercicio verdadero del derecho de sufragio y aquella facultad de sus gobernantes que reside en el pueblo libre de los Estados Unidos."

Y termina luego la opinión, después de la interesante discusión que hace del lenguaje que en dicho caso se consideró como constitutivo de calumnia, en la forma siguiente:

"* * * Es una de las infelicidades de la vida pública que un funcionario público tenga por tal motivo que estar sujeto a la crítica y a menudo a injustos comentarios; pero a menos que éstos se excedan de los límites fijados por la ley deberán ser tolerados en defensa del mantenimiento de la libertad de la palabra.

"En los diferentes casos que han sido citados a este tribunal o considerados por nosotros y en los cuales en tales circunstancias se han establecido acciones, se ha declarado que las palabras constituyen una verdadera imputación de mala conducta. Así por ejemplo, en los casos de *Wilson* v. *Noonan,* 23 Wis., 105; *Powers* v. *Dubois,* 17 Wend., 63, y en el de *Littlejohn* v. *Greeley,* 13 Abb. Pr., 41.

"Pero cuando las palabras vertidas vienen a ser simplemente la opinión del que las profiere, por duro que haya sido el lenguaje en ellas expresado con respecto al carácter del funcionario público se ha resuelto que no pueden establecerse acciones contra las mismas. *Onslow* v. *Horne,* 3 Wils., 177; *Hogg* v. *Dorrah,* 2 Port. (Ala.), 212.

"De igual manera si las palabras pueden dar lugar a sospechas de que una persona que no es un funcionario público ha cometido un delito no pueden servir de base al establecimiento de una acción. *Simmons* v. *Mitchell,* L. R., 6 App. Cas., 156.

"Alega además el demandante en su demanda, que es por el interés y verdadera dignidad de la comunidad que no habrá de permitirse el escándalo de los magnates, y se funda en la antigua doctrina de *scandalum magnatum* para sostener su demanda.

"El Sr. Odgers en su obra sobre Libelo y Calumnia, expresa que a su juicio, semejante acción no se ha establecido en Inglaterra desde el año 1710.

"En la obra de Townshend sobre Calumnia, se dice que la doctrina del *scandalum magnatum* no es conocida en los Estados Unidos, Sec. 187.

"En el caso de *Hogg* v. *Borrah,* arriba citado, el abogado del demandante negó expresamente el hecho de que se fundara en dicha

doctrina. El demandante no ha citado ninguna decisión o texto legal en apoyo de su alegación para probar que existe en este país este reme· dio especial, y nuestra opinión es que jamás ha sido adoptado en Massachussets. Véase también el caso de *Reeves* v. *Winn,* 97 N. C., 246.''

Esto no es sino una ampliación de la cuestión últimamente expresada en el alegato del apelado en el mismo caso, en el cual se cita la obra de Odgers sobre Libelo y Calumnia con el objeto de demostrar que aquellas personas que desempeñan cargos públicos no deben ser demasiado susceptibles en aquellos casos en que se hacen comentarios acerca de los mismos.

En el presente caso, sin embargo, preferimos fundar nues· tra resolución principalmente en la simple proposición de que las palabras que en la denuncia se imputan al acusado, bajo ningún concepto pueden ser consideradas en el sentido de que constituyen una expresión calumniosa según el significado del estatuto. Su letra es demasiado clara para que requiera interpretación. Las secciones 1, 2 y 3 de la Ley para Definir y Castigar el delito de calumnia, aprobada en marzo 9 de 1911, dicen lo siguiente:

''Sección 1.—Se entiende por calumnia toda falsa y maliciosa imputación hecha de palabra y públicamente contra otra persona natural o jurídica, imputándole la comisión de hecho constitutivo de delito.

''Sección 2.—Entiéndese también por calumnia todo *relato* (texto español: *palabra*) (texto inglés: *tale*) o informe texto español: *concepto*) (texto inglés: *report*) preferido maliciosa y publicamente en deshonra, descrédito, menosprecio de otra persona natural o jurídica.

''Sección 3.—Se presumirá maliciosa y será calumnia procesable toda expresión calumniosa hecha públicamente en presencia o en ausencia de la persona agraviada.''

La ''expresión calumniosa'' a que hace referencia la sección 3ª., deberá contener, desde luego, palabras que sean ca-

lumniosas de acuerdo con una u otra de las definiciones dadas a dicha frase en las secciones 1 y 2, pues de otro modo no será calumniosa. Que ninguna imputación, por falsa y maliciosa que sea puede constituir calumnia con arreglo a la sección 1, a menos que el cargo imputado fuere la comisión de algún hecho constitutivo de delito, es una cuestión que no admite discusión alguna. Es asimismo evidente que la sección 2 se refiere únicamente a "un relato" (*tale*), el texto castellano de la ley dice "toda palabra"), o "informe" (*report*), (en la edición castellana "concepto"), y no puede ser considerada dicha sección mediante un esfuerzo de imaginación, de conformidad con ninguna regla de interpretación que pueda ser susceptible de aplicación al interpretarse un estatuto penal, como que comprende alguna palabra o combinación de palabras que no sean equivalentes a "un relato" (*tale*) o "informe" (*report*), por mucho que dicha palabra o frase tienda a perjudicar el honor, reputación o méritos de una persona natural o institución social.

Ahora bien, el decir públicamente de un alcalde o cualquier otra persona o funcionario público que es un vago o vagabundo, o ambas cosas, dando a dichas palabras la significación menos favorable que pueda hallarse en los diccionarios del idioma en que se pronuncien, y que debiera ocuparse de trabajar y de las necesidades de los pobres, por impolítico, discutible por su estilo u ofensivo que fuere este lenguaje para la persona que de tal modo se critica, no constituye "un relato" (*tale*) o "informe" (*report*), y no expresa ni puede alegarse que en dicho lenguaje se imputa la comisión de algún delito comprendido en nuestro Código Penal.

En el caso de *Demolli* v. *United States*, 6 L. R. A., nueva serie, página 424, el Juez de Circuito, Sr. Hook, termina su opinión en la forma siguiente:

"* * *. Los preceptos de los estatutos penales no son elásticos o susceptibles de ser conformados, y la extensión o alcance que les den

las cortes de justicia hasta hacerlos comprender conducta que es groseramente ofensiva á la moral y decoro público, como fué la de Demolli, puede dar lugar a resultados mucho más perniciosos que aquellos que pudieran ocasionarse con la fuga del delincuente.

"Un Código Penal de la China autorizaba al Juez para que en el caso de no hallar ley penal que fuera precisamente aplicable, se guiara por el espíritu de los preceptos de ley establecidos para aquellos casos que tuvieran más semejanza al sometido a consideración (Código Penal de China por Staunton, artículo 44, página 43); pero en este país, como se dijo en el caso de *Todd* v. *United States,* 158 U. S., 278, 282, 39 L. ed. 982, 983, 15 Sup. Ct. Rep., 889, 890, es axiomático que a los estatutos que establecen y definen delitos no puede dárseles mayor alcance en lo que respecta a su verdadera significación, y que ningún acto por perjudicial que fuere podrá ser castigado de acuerdo con el referido estatuto, a no ser que aparezca claramente comprendido en sus disposiciones. 'No pueden existir delitos por deducción y antes de que una persona pueda ser castigada, su caso deberá ser claro y estar ciertamente comprendido en el estatuto.' "

La cuestión concreta sobre la cual realmente descansa la resolución de este caso no fué promovida en este tribunal, como tampoco, según nuestros informes, en la corte inferior. Es también un hecho cierto que la versión española de la sección 2ª. de la ley ya citada dice "toda palabra o concepto proferido maliciosa y públicamente," etc., (*any word or thought maliciously and publicly spoken*), mientras que la inglesa expresa "*a tale or report maliciously and publicly made*" (un relato o informe que se hace maliciosa y públicamente.) Por la mera faz de la versión española que es claramente una traducción muy deficiente podría sostenerse suficientemente la sentencia, pero este tribunal generalmente ha resuelto, especialmente cuando el estatuto es nuevo o de origen americano, que en los casos de conflicto entre las dos versiones, prevalecerá la inglesa. Véanse los casos de *El Pueblo* v. *Charón,* 7 D. P. R., 428; *Cruz* v. *Domínguez,* 8 D. P. R., 581; y el de *El Pueblo* v. *Torres,* 9 D. P. R., 440.

No imputándose en la denuncia que fué formulada nin-

gún delito, debe revocarse la sentencia apelada y sobreseerse el caso.

> *Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Asociados Wolf y del Toro.

Los Jueces Sres. Presidente Hernández y Asociado Aldrey firmaron haciendo constar estar conforme con la sentencia.