El Pueblo de Puerto Rico, demandante y apelado *v.* Víctor Mirayes, acusado y apelante.

Núm. 6649.—*Sometido:* Julio 20, 1937. *Resuelto:* Noviembre 23, 1937.

*Carlos Santana Becerra,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

___

\* Nota: Véase el prefacio.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Contra Víctor Mirayes se presentó una denuncia en la Corte Municipal de San Juan, Sección Segunda, que copiada a la letra, en lo pertinente, dice:

"Yo, Secundino Pérez Sánchez, Dtve. P. I., vecino de Santurce, San Juan, calle de Ave. Ponce de León, núm. 181, de mayor de 21 años, formulo denuncia contra Víctor Mirayes, por delito de Libelo Infamatorio, cometido de la manera siguiente: Que en 29 de febrero de 1936 y en la Ave. Ponce de León de Santurce, San Juan, del Distrito Judicial Municipal de San Juan que forma parte del Distrito Judicial de San Juan, P. R., el referido acusado, allí y entonces, ilegal, voluntaria y maliciosamente y con intención criminal de impugnar la honradez e integridad del Hon. Blanton Winship, Gobernador de Puerto Rico, exponiéndole al desprecio público, publicó, repartió e hizo circular en una hoja impresa con el título de 'Última Hora,' entre otros, los siguientes conceptos:

" 'FUERA WINSHIP . . . Comandante de las Fuerzas Asesinas de Puerto Rico.—Los recientes acontecimientos ponen aún más de manifiesto la incapacidad del loro de la Fortaleza, el 'Generalísimo' (léase 'abusivísimo') BASTON WINSHIP y otras hierbas.—Winchito añade ahora una burrada a las muchas que ya ha cometido: Pide voz en cuello que se implante de nuevo la pena de muerte en Puerto Rico. ¡Qué va, Winchito! Eso está bueno para tu tierra, donde el linchamiento es el menú favorito; pero aquí en Puerto Rico, somos un poco más civilizados. ¡Silendio, Winship, Silencio! ¡Para decir disparates, no hables!'

"Cuya hoja impresa fué publicada, repartida y hecho circular por el acusado, a raíz de los sucesos ocurridos en el Cuartel de la Policía Insular de esta Capital, en donde perdieron la vida dos jóvenes, Elías Beauchamp e Hiram Rosado, por disparos héchosles por la policía, y con la maliciosa intención de imputar al Hon. Gobernador de Puerto Rico el haber ordenado la muerte de dichos jóvenes. Hecho contrario a la ley."

Elevados los autos a la corte del distrito, Mirayes pidió la eliminación del último párrafo de la denuncia. Llamada la causa para la celebración del juicio, insistió en su moción eliminatoria el acusado. Se opuso a ella el fiscal, y dijo y resolvió la corte lo que sigue:

"Vamos a oír la prueba y la corte estudiará la cuestión y si es inmaterial no lo tomará en consideración.

"La corte deniega por ahora la moción para considerarla más tarde, cuando vaya a resolver el caso. Si es inmaterial, yo lo declararé así.

"Vamos a oír la prueba y la Corte resolverá después esta cuestión."

Ninguna de las partes objetó y fué llamado el primer testigo de cargo, Secundino Pérez, quien declaró que el 29 de febrero de 1936, Mirayes vendía en Santurce, San Juan, "estas hojas sueltas a dos centavos cada una . . . unas cuantas personas compraban de ellas" y manifestó el fiscal, "voy a presentar como prueba la hoja suelta ésta," e intervino la defensa como sigue:

"P.—¿Quién dice usted que cogió la hoja suelta?

"R.—Pues diferentes personas, y entre ellas Luis Benítez, el Jefe Auxiliar de la Detective. . . Y se la presentó al Juez Fernández, que estaba inscribiendo al Partido Regional en Santurce, en el Cuartel de la Policía allí en esos días.

"Defensa: No hay oposición a la admisión de la hoja ésta.

"Juez: Se admite sin oposición, y se marca Exhibit No. 1 de el Pueblo."

La hoja así admitida en evidencia se envió original a esta Corte Suprema. Contiene inmediatamente antes de lo transcrito en la denuncia, lo que sigue:

"¡Fuera Vázquez! ¡Beauchamp Asesinado! El consenso de la opinión pública en torno a la muerte de los jóvenes Elías Beauchamp e Hiram Rosado se manifiesta cada vez más acremente en contra de los miembros de la Uniformada bajo cuya custodia estaban, especialmente contra el Jefe Vázquez.

". . . . . . . . . .

"Para clasificar la muerte de Beauchamp y Rosado, sólo existe una palabra: ¡Asesinato!"

Llamado el segundo y último testigo del Pueblo, Luis Benítez, declaró:

"Yo me dirigía al Cuartel donde tengo mi oficina y vi que circulaba una hoja suelta; conseguí una y al leerla noté que estaba

escrita en conceptos injuriosos para el Gobernador de Puerto Rico y al mismo tiempo que no tenía el pie de imprenta. Entonces le ordené al Detective Pérez Sánchez arrestar al individuo que estaba repartiendo esas hojas, coincidiendo con que al llevarlo al cuartel estaba allí el Juez Municipal Victoriano Fernández. Fué interrogado sobre quién había escrito la hoja . . . y dijo que la hoja era de él; que él la había hecho, y que tenía su membrete impreso en la misma hoja, tenía su nombre, y que él reconocía que él era el responsable, que no buscaran a más nadie que él se hacía responsable de ese hecho. Entonces el juez ordenó que se estudiara el caso para hacer la correspondiente denuncia.

"Fiscal: ¿Qué había ocurrido unos días antes en el cuartel de la Policía de San Juan?

"Defensa: Señor Juez, nosotros nos vamos a oponer por creerlo inmaterial, y para ser consistentes con la cuestión de derecho que hemos levantado.

"Juez: La Corte permite la pregunta.

"Defensa: Excepción.

"Fiscal: ¿Qué había ocurrido unos días antes en el Cuartel de la Policía de San Juan?

"Testigo: Unos días antes habían ocurrido los acontecimientos éstos de la . . .

"Fiscal: ¿Cuáles eran los acontecimientos? ¿Quiénes habían muerto allí en el cuartel?

"Testigo: Unos muchachos nacionalistas.

"Fiscal: ¿Cómo se llamaban?

"Testigo: Beauchamp y Rosado."

Cuando terminó el testigo, manifestó el Fiscal: "Ése es el caso, señor juez," y expresó la defensa:

"Nosotros, señor juez, vamos a someter el caso también con la siguiente cuestión que vamos a levantar: Independientemente de la imputación del *innuendo,* que ya hemos discutido, y que sostenemos que es inmaterial y completamente impertinente, y que es una mera deducción legal del denunciante que no está sostenida por el texto del supuesto libelo, nosotros entendemos que considerado el texto en sí, no aduce hechos suficientes para constituir el delito de libelo, y nos basamos en la doctrina sentada por nuestro Tribunal Supremo en el caso de *El Pueblo* v. *López,* reportado al tomo 23 D.P.R. 114."

La corte anunció que resolvería el caso al día siguiente y en efecto así lo hizo declarando culpable al acusado del de-

lito de libelo imputádole, imponiéndole un año de cárcel y las costas.

Apeló Mirayes para ante esta Corte Suprema y señala en su alegato la comisión de dos errores cometidos a su juicio por la corte al declarar sin lugar la moción eliminatoria y al no absolverlo perentoriamente por no constituir la publicación materia libelosa.

■■ Dice el artículo 243 del Código Penal:

"Constituye libelo cualquiera maliciosa difamación expresada por medio de escritos, impresos, signos, láminas, dibujos, u otra forma análoga, tendentes a denigrar la memoria de un difunto, o impugnar la honradez, integridad, virtud o buena fama de un vivo, o publicar sus defectos naturales o supuestos, exponiéndole así al odio, desprecio o ridículo público."

Y dispone el 245 del propio cuerpo legal:

"Se presumirá maliciosa toda publicación injuriosa, si no se probare que hubo motivo justificable para hacerla."

Ninguna evidencia en justificación presentó el acusado. La prueba del fiscal fué admitida con la sola objeción que dejamos consignada, improcedente a nuestro juicio. Queda en pie la publicación hecha por el acusado tal como surge de la denuncia y más completa aún de la hoja suelta.

¿Constituye lo publicado en dicho impreso una maliciosa difamación tendente a impugnar la honradez, integridad, virtud o buena fama del Gobernador Winship?

Una respuesta en la afirmativa se impone. La publicación comienza imputando al Gobernador el hecho de ser el "Comandante de las Fuerzas Asesinas de Puerto Rico" inmediatamente después de haber calificado de asesinato un hecho concreto atribuído a miembros de dichas fuerzas, o sea "de la Uniformada," esto es, de la Policía Insular, cuya superior autoridad en cuanto a su dirección reside en el Gobernador de acuerdo con la ley. Sección 2077, Estatutos Revisados de Puerto Rico, Compilación de 1911, pág. 424. ¿Acaso puede considerarse honrado, íntegro y virtuoso

quien comanda una organización de asesinos? ¿Podría conservar su buena fama el que tal hiciera? Claro es que no y por tanto precisa concluir que la imputación no sólo tiende si que de hecho impugna maliciosamente la honradez, integridad, virtud y buena fama del Sr. Winship, Gobernador de Puerto Rico.

Y si a lo dicho se agregan las imputaciones que siguen y la forma manifiestamente denigrante e injuriosa en que aparecen redactadas, la conclusión a que llegáramos se impone con más fuerza todavía.

No puede el derecho a la libre expresión del pensamiento amparar excesos semejantes. Lo hecho por el acusado constituye una agresión más seria quizá que si hubiera herido el cuerpo de su víctima. Hirió su reputación que es parte de su vida y que la ley debe proteger y protege lo mismo que su cuerpo.

El caso que invoca el apelante—*El Pueblo* v. *López,* 23 D.P.R. 114—es distinto. Allí la corte se vió obligada a resolver que el lenguaje ofensivo usado caía de lleno dentro del principio sentado en el de *El Pueblo* v. *García,* 21 D.P.R. 163, expresándose por medio de su Juez Asociado Sr. Hutchison, con palabras que entrañan admoniciones que deben grabarse bien en su recto significado en la conciencia pública, constitutivas de aquella sanción moral que guiados por un espíritu de justicia se lanzan a veces a aplicar los tribunales cuando no existe la sanción legal que se invoca. Dijo la corte:

"Es una curiosa coincidencia que el lenguaje ofensivo que ha sido imputado al acusado caiga tan de lleno dentro del principio sentado por esta corte en el caso de *El Pueblo* v. *García,* 21 D.P.R. 163, citado por el acusado, que sugiere la intención deliberada y malicioso propósito de ir tan lejos en el uso de este lenguaje como fuere posible hacerlo sin peligro alguno, contando para ello con la protección de la interpretación que fué dada a estas cuestiones en dicho caso. Pero no es de la incumbencia de las cortes prescribir el remedio para cualquier tendencia maligna aún cuando los síntomas indiquen una asimilación defectuosa de los principios fundamentales

proclamados judicialmente. Ni tenemos necesidad de considerar extensamente los hechos expresados en la denuncia. Las palabras que fueron imputadas al acusado pronunciadas en un momento tan crítico y bajo circunstancias que son conocidas de todos, de notoriedad pública e historia contemporánea, de las cuales tomamos conocimiento judicial sin hacer mención de detalles, caracterizan suficientemente tanto al orador como al acto suyo de expresarlas, siendo superfluo todo comentario respecto a tal conducta. Y si él no hablaba meramente a nombre propio sino también en una capacidad representativa, entonces el estigma que de tal modo se imprime sobre sus representados es a su vez una cuestión en la cual no debemos sentir ningún interés. La dura escuela de la experiencia es la única esperanza de salvación para aquéllos que toleran tales intérpretes.''

Aparte de que en los casos de *El Pueblo* v. *García,* supra, y *El Pueblo* v. *López,* supra, se imputó directamente el delito de calumnia de acuerdo con la ley para definir y castigar el delito de calumnia e injuria, aprobada en 9 de marzo de 1911 (Código Penal, ed. de 1937, pág. 173) y aquí se imputa directamente el delito de libelo infamatorio previsto en el artículo 243 del Código Penal, es lo cierto que imputar en una hoja impresa que se hace circular por su propio autor al Gobernador de la Isla el hecho de ser el ''Comandante de las Fuerzas Asesinas de Puerto Rico,'' no es expresar una opinión más o menos injuriosa acerca de un funcionario público, si que es relatar algo sobre dicho funcionario, atribuirle algo, maliciosa y públicamente, que tiende a su deshonra, descrédito y menosprecio.

En cuanto a la eliminación del *innuendo* bastará decir que aunque se llegara a la conclusión de que tal como aparece redactado no estuviera enteramente sostenido por los hechos imputados en el cuerpo de la denuncia, el error que pudiera haberse cometido no sería perjudicial porque la sentencia condenatoria no se fundó en el *innuendo* sino en los hechos perpetrados por el acusado de acuerdo con la denuncia y que puso de manifiesto la prueba. Se trata además de una denuncia y ''ya hemos decidido en repetidas ocasiones que las reglas que gobiernan las acusaciones no serán

puestas en vigor estrictamente al ser invocadas como aplicables a las denuncias corrientes,'' como acabamos de recordar en el caso de *El Pueblo* v. *Cintrón,* resuelto en el día de hoy (pág. 334).

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Córdova Dávila no intervino..