JUANITA ZALDUONDO DÍAZ, demandante y apelada, v. NI-
COLÁS ITURREGUI y ANA M. DE ITURREGUI, demandados y
apelantes.

Número 11967.

*Sometido:* 29 de febrero de 1960. *Resuelto:* 12 de junio de 1961.

4

Antonio J. Matta, abogado de los apelantes; y Fiddler, González Guillemard & Rodríguez (Fiddler, González & Nido en el alegato) abogados de los apelantes; Wilfrido Roberts, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

La cuestión principal en este recurso es si una acción de retracto legal pendiente afectó al sub-adquirente del condominio objeto del retracto.

En el año 1954 falleció testado Luis Zalduondo Veve. Como herederos suyos dejó a sus siete hijos Milagros, María, Carlota, Berta, Diego y Luis Zalduondo Cruz y Juanita Zalduondo Díaz. Entre los bienes de su herencia se encontraba una finca rústica de 252.90 cuerdas radicada en el barrio Juan Martín del Municipio de Luquillo. La finca fue inscrita en el Registro de la Propiedad a nombre de los siete hijos en iguales partes proindivisas.

El 3 de junio de 1955 la comunera Milagros Zalduondo Cruz vendió a Nicolás Iturregui, casado, con Ana Margarida, su condominio de una séptima parte indivisa sobre dicha finca por el precio de $7,200. El 10 de junio de 1955, es decir, siete días después de esa venta, la comunera Juanita Zalduondo Díaz promovió contra la sociedad ganancial Iturregui-Margarida, ante la Sala de San Juan del Tribunal Superior, una acción para retraer ese condominio. Con su demanda consiguió la suma de $7,200, importe del precio de la venta, y, además, $100 "para cubrir el importe de los gastos del contrato y cualquier otro pago legítimo hecho por los compradores para la venta así como para cubrir cualquier gasto necesario o útil hecho en la cosa vendida." Entre otras alegaciones de su demanda expuso:

"En caso de que la suma de $100 no fuere suficiente para cubrir los gastos mencionados la demandante ofrece pagar su importe una vez sea conocido y al efecto acompaña con la presente demanda una fianza para garantizar que consignará dicho importe."

El 22 de diciembre de 1955 la acción de retracto se encontraba pendiente. Los esposos demandados, para esa fecha, no habían inscrito en el registro el condominio, ni aún

estaba presentado para su inscripción el título. En ese día, los esposos Iturregui-Margarida vendieron a Ramón Agudo Cano y su esposa Raquel Baker el condominio objeto de la acción de retracto en tramitación.[1]

El 26 de enero de 1956 la retrayente solicitó y obtuvo del tribunal de instancia la sustitución de los esposos originalmente demandados Iturregui-Margarida por los nuevos adquirentes pendente litis, del condominio en litigio, los esposos Agudo-Baker como partes demandadas. En la misma fecha, con autorización del tribunal, presentó demanda enmendada en la cual se reprodujeron las alegaciones de la original, se alegó la segunda venta a favor de los nuevos esposos demandados, se hizo constar que éstos, así como los demandados originales eran personas extrañas a la comunidad y se suplicó que se entendiera consignada a favor de los esposos Agudo-Baker la suma de $7,200, y se les ordenase otorgar a favor de la demandante escritura pública traspasando a ella el título del condominio que primeramente había vendido Milagros Zalduondo Cruz a los esposos Iturregui-Margarida.[2]

---

[1] El 23 de diciembre de 1955 los comuneros María, Carlota, Berta y Diego Zalduondo Cruz vendieron sus respectivos condominios en el inmueble a los esposos Ramón Agudo Cano y Raquel Baker y, en 9 de enero de 1956 los mismos esposos compraron al comunero Luis Zalduondo Cruz el condominio perteneciente a éste. En relación con estas dos ventas, Juanita Zalduondo Díaz promovió, separadamente, ante la misma Sala, otras dos acciones de retracto legal, directamente contra los esposos Agudo-Baker, que luego fueron consolidadas a los fines de su resolución.

[2] La orden autorizando la sustitución de partes demandadas dice así:

"ORDEN. Vista la anterior moción se declara la misma con lugar y se sustituye como parte demandada a los esposos Nicolás Iturregui y Ana M. de Iturregui por los esposos Rafael (sic) Agudo Cano y Raquel Baker.

"Expídase por la Secretaría emplazamientos en la forma ordinaria dirigidos a los nuevos demandados." El emplazamiento expedido se dirigió a "Ramón Agudo Cano y Raquel Baker, demandados sustitutos." El primero fue emplazado como demandado "mencionado en dicho emplazamiento." Sin embargo, ni en el título de la demanda enmendada, ni en sus alegaciones figuraban Agudo Cano y Raquel Baker, o alguno de

Agudo Cano contestó la demanda enmendada. Admitió todo lo alegado en los párrafos primero, segundo y tercero de la demanda enmendada que dicen:

"1. Por escritura número 58 de 3 de junio de 1955 otorgada ante el notario . . . , doña Milagros Zalduondo Cruz vendió a los esposos demandados todo título, derecho o participación que como heredera de don Luis Zalduondo Veve le correspondiera en una finca de 252.90 cuerdas sita en el barrio Juan Martín, de Luquillo, Puerto Rico, y que se describe así:

'RÚSTICA: Parcela de terreno compuesta de 252.90 cuerdas sita en el barrio Juan Martín de Luquillo. Colinda al Norte y Este con don Nicolás Iturregui; al Sur, con la Autoridad de Tierras y varios parceleros y al Oeste, con la Hacienda Margarita.'

"2. Dicha venta se efectuó por precio de $7,200.

"3. Con posterioridad a la iniciación de la presente acción, y mientras la misma se encontraba pendiente, los demandados originales esposos Iturregui-Margarida vendieron a los esposos Ramón Agudo y Raquel Baker la particpación que habían adquirido según se ha expuesto en el hecho primero."

No negó, —y por tanto debe considerarse admitida conforme lo disponía la Regla 8(d) de Enjuiciamiento Civil entonces en vigor—la parte del párrafo cuarto que dice "La demandante es y era co-propietaria de la finca descrita."

En relación con los párrafos quinto, y sexto y último, expuso que por constituir los mismos "cuestiones de derecho" nada tenía que alegar. Esos dos párrafos exponen:

"5. La demandante desea retraer la participación vendida a los demandados y al efecto consignó en la Secretaría de este

ellos, como demandados. En la súplica se pidió "sentencia declarando con lugar la presente demanda (la enmendada) y se ordene a los demandados, o en su defecto al Alguacil . . . para que otorguen la correspondiente escritura . . . ." Esas circunstancias motivaron que Agudo Cano solicitara y obtuviera permiso para "intervenir *como parte demandada* en esta acción, y se le tenga como tal . . . ." De ahí en adelante tanto los abogados de las partes como el tribunal de instancia consideraron como únicas partes demandadas a Agudo Cano y a su esposa Raquel Baker, aunque aquél a veces se denominaba a sí mismo "interventor." En este recurso han comparecido como los "demandados-apelantes."

Tribunal la suma de $7,200, precio de la venta, a disposición de los demandados esposos Iturregui-Margarida y la suma adicional de $100 para cubrir el importe de los gastos del contrato y cualquier otro pago legítimo hecho por los compradores para la venta así como para cubrir cualquier gasto necesario o útil hecho en la cosa vendida. En caso de que la suma de $100 no fuere suficiente para cubrir los gastos mencionados la demandante ofrece pagar su importe una vez sea conocido y al efecto acompaña con la presente demanda una fianza para garantizar que consignará dicho importe.

"6. La demandante se obliga a no vender la participación retraída dentro de cuatro años."

Agudo Cano únicamente negó de la demanda enmendada la parte de su párrafo 4 que dice:

". . . y tanto los demandados originales como los esposos Agudo-Baker eran extraños a la comunidad de bienes existentes."

Su contestación alega como defensas especiales, en síntesis, que (a) la demanda estaba "fatalmente prescrita" en cuanto a él se refería; (b) la acción de retracto no podía prosperar porque él, para la fecha en que la acción "se inició" en su contra, no era un extraño; y (c) que la demandante no había venido ante el tribunal "con las manos limpias y como cuestión de equidad debía rechazarse de plano su acción traída tardíamente y de mala fe."

Después de presentada esa contestación la demandante solicitó del tribunal a quo que dictara sentencia sumaria a su favor. Basó su moción en "los autos del caso" y en una declaración jurada de la demandante en la que, entre otras cosas, ella declara:

"4. Que ni los esposos demandados don Nicolás Iturregui y doña Ana M. de Iturregui, ni los cónyuges también demandados don Ramón Agudo Cano y doña Raquel Baker, son ni han sido nunca herederos de don Luis Zalduondo Veve; no teniendo, por lo tanto, ahora o en fecha alguna, ningún interés o participación en la finca objeto de las causas de acción citadas en el epígrafe, excepto el derecho que adquirieron de los herederos Milagros, María, Diego, Carlota, Berta y Luis Zalduondo Cruz."

Como se notará, por esa declaración jurada se tendía a comprobar el único hecho de la demanda enmendada negado por Agudo Cano, o sea: que tanto los esposos Iturregui-Margarida como los esposos Agudo-Baker eran extraños a la comunidad formada por los herederos de Luis Zalduondo Veve.

Se opuso a dicha moción Agudo Cano así:

"Que entiende el Interventor que dicha Moción de Sentencia Sumaria no procede en cuanto a la demandante se refiere y de proceder sería a favor del Interventor demandado Ramón Agudo por el siguiente fundamento:

"Porque está fatalmente prescrita cualquier causa de acción o derecho que pudiera haber tenido la demandante en contra del interventor."

Discutida y sometida para su resolución la moción sobre sentencia sumaria, el tribunal de instancia determinó su procedencia y dictó sentencia sumaria a favor de la demandante, que en su parte dispositiva es como sigue:

"Los demandados otorgarán la correspondiente escritura a favor de la demandante, traspasándole la participación que, en la finca descrita en la demanda del epígrafe, adquirieron, y la cual, por disposición de nuestro Código Civil, y actuaciones legales llevadas a cabo por la demandante, estaba sujeta a demanda de retracto.

"El precio de adquisición, para la demandante, será de $7,200 más los importes de gastos de los contratos y cualquier otro pago legítimo hecho por los demandados para la venta, según lo expuesto en el párrafo 4 de la demanda.

"Se imponen a los demandados las costas, honorarios de abogado por la suma de $600."

De esta sentencia apeló Agudo Cano y en su alegato hace el siguiente señalamiento de errores:

"1. Erró el tribunal inferior al admitir y dar curso a la demanda de retracto de la apelada contra Iturregui.

"2. Erró el tribunal inferior al dictar sentencia sumaria.

"3. Erró el tribunal inferior al sustituir a los apelantes como parte demandada y al dictar sentencia contra los mismos.

"4. Erró el tribunal inferior al ordenar la sustitución y enmienda solicitadas por la apelada, permitiendo que el pleito procediera exclusivamente contra los apelantes.

"5. Erró el tribunal inferior al dictar sentencia contra los apelantes, ya que éstos eran terceros hipotecarios o civiles."

 Por el primer señalamiento los recurrentes sostienen:

(a) que el tribunal de instancia no debió admitir la demanda original contra Iturregui porque con ella no se consignó, además del precio de la venta, el montante exacto de "los gastos del contrato", ni se obligó a pagar los "necesarios y útiles" realizados por el comprador en la cosa a retraerse; y (b) que dicho tribunal carecía de facultad legal para dar curso a la demanda de retracto por no haberse celebrado previamente el "acto de conciliación" que requería la ley de Enjuiciamiento Civil para Cuba y Puerto Rico en sus artículos 1619 y 1620, que deben considerarse vigentes. Debemos resolver ambas cuestiones en contra de los demandados-recurrentes.

(a) Invocan los demandados apelantes, ahora recurrentes, en apoyo de su primer punto, lo dispuesto en el número 2do. del artículo 1616 de la antigua Ley de Enjuiciamiento Civil que empezó a regir en Puerto Rico el 1ro. de enero de 1886, y que, en lo pertinente dispone:

"Artículo 1616. Para que pueda darse curso a las demandas de retracto se requiere:

"1. . . . . . . . .

"2. Que se consigne el precio si es conocido, o si no lo fuere, que se dé fianza de consignarlo luego que lo sea."—Énfasis nuestro.

Claramente nos indica ese artículo que la única suma que está obligado a consignar el comunero retrayente para cursarse su demanda de retracto es el precio de la primera venta que originó la retroacción y ninguna otra suma. Es obvio que la exigencia de la consignación simultánea y efec-

tiva del precio de venta con la presentación de la demanda de retracto, o en su caso la de dar fianza, no se hace extensiva en forma alguna a las otras sumas adicionales que por mandato expreso del artículo 1407 de nuestro Código Civil viene obligado el retrayente a "rembolsar al comprador", y que son: "los gastos del contrato, y cualquier pago legítimo hecho para la venta" y "los gastos necesarios y útiles hechos en la cosa vendida." (³)

Por ser estos gastos adicionales al precio ordinariamente desconocidos para el retrayente, el momento para su rembolso o abono al comprador no se hace concurrir con el de la presentación de la demanda. Su existencia y cuantía deben ser alegadas y comprobadas por éste y su condición de abonables y monto fijados por el tribunal en su sentencia. (⁴) El retrayente, de prosperar la acción, vendrá obligado en cumplimiento de la sentencia que declare haber lugar al retracto, a satisfacer previamente todos los gastos determinados judicialmente o por los litigantes de común acuerdo, para obtener el traspaso del título a la cosa retraída y la entrega de su posesión. (⁵)

---

(³) *González* v. *Acha*, 21 D.P.R. 134, 136 (1914); *Martínez* v. *Pirallo*, 61 D.P.R. 91, 93 (1942); *Llambías* v. *Pagán*, 65 D.P.R. 451, 463 (1945); SS. de 13 de julio de 1945 y 8 de junio y 13 de noviembre de 1954, Tribunal Supremo de España; Manresa X, pág. 358; Scaevola, XXIII, pág. 913; Castán, IV, 8va. Ed. 138; Manuel de la Plaza, "Derecho Procesal Civil Español", 3ra. Ed. Vol. II, 2da. Parte, pág. 339; Borell y Soler, III, 359; "La Preferencia Adquisitiva en el Derecho Español", pág. 80, por Ramón Badenes Gasset, Bosch, Barcelona, 1958.

(⁴) En su contestación Agudo Cano no los alegó. La sentencia dispuso que la demandante pagaría, además del precio, "los importes de gastos 'de los contratos' y cualquier otro pago legítimo hecho por 'los demandados' para la venta." Esta disposición no es correcta, puesto que lo que debe abonar el retrayente son los gastos de la primera venta que motivó el ejercicio del retracto y los "gastos del contrato" son los hechos por el primer comprador, en este caso, Iturregui.

(⁵) Debe entenderse modificada nuestra decisión en *Fuertes* v. *Arzón*, 81 D.P.R. 491 (1959) en lo referente al requisito núm. 3 que señalamos a la pág. 497, en el sentido de que solamente es necesaria la consignación simultánea del precio estipulado de la venta, si se conoce, y si no lo fuese que se dé fianza de consignarlo luego que lo sea.

La consignación de la suma de $100 y la prestación de fianza fueron innecesarias. Con arreglo a dicho artículo 1407, el importe de los gastos del contrato y los demás pagos y gastos no forman parte del precio estipulado, como afirma el demandado-recurrente en su alegato.

Tampoco tenía que obligarse, en forma específica, la retrayente en su demanda al rembolso de esos gastos y pagos adicionales, ya que esa obligación está preestablecida legalmente. A pesar de ello, la demanda enmendada, en su párrafo 4to. contiene un ofrecimiento sustancial al respecto y la sentencia dispone, en cierto sentido, su devolución.

(b) Podríamos negarnos a considerar los méritos de la alegada invalidez del fallo recurrido, fundada en la falta de la celebración del acto de conciliación, porque es una cuestión nueva, no suscitada ni debatida en etapa alguna del procedimiento ante el tribunal de instancia. Después de contestar la demanda, de oponerse a la moción sobre sentencia sumaria, de pretender indirectamente que se dictara esa sentencia sumaria a su favor, de promover varios incidentes en el caso, de dictarse sentencia adversa y apelar la misma, Agudo Cano la plantea, por primera vez, en su alegato ante nos.

Su insistencia en considerarla como una cuestión jurisdiccional o de ausencia de facultad del juez sentenciador para dictar la sentencia sumaria, nos ha decidido a considerarla.

Bajo la antigua Ley de Enjuiciamiento Civil, antes de promoverse un juicio declarativo, debía intentarse la conciliación de las partes ante el Juez municipal competente, excepto en los juicios que taxativamente enumeraba. La institución de los actos de conciliación, regulada por los artículos 459 a 479 de aquella ley, respondía a la finalidad de impedir pleitos y al deseo de facilitar a posibles litigantes la rápida y económica solución contractual de contiendas susceptibles de ser resueltas por los tribunales y sin necesidad de juicio público. Su origen se remonta a las Doce Tablas,

que en cierto pasaje disponían que se diera fuerza de ley a lo que las partes convenían "yendo de camino para celebrar juicio." Consistía, considerada en conjunto, en una entrevista concedida por la ley a las partes abocadas a una controversia con el fin de que pudieran explicar sus respectivas pretensiones y terminar con un acuerdo amistoso o avenencia si lo deseaban; con esta actuación preliminar era posible la evitación del litigio. [6]

Por el artículo 460 se disponía:

"No será necesario el acto de conciliación para la interposición de las demandas de tanteo, de retracto y de cualquiera otra que sea urgente y perentoria por su naturaleza. Mas si hubiere de seguirse pleito, se exigirá el acto de conciliación o la certificación de haberse intentado sin efecto."

La antigua ley citada, en sus artículos 1616 a 1628, regulaba la tramitación de los juicios de retractos. Los números 1619 y 1620 disponían:

"*Art.* 1619.—El juez habrá por presentada la demanda y por intentado el retracto, y mandará hacer el depósito de la cantidad consignada en el establecimiento público destinado al efecto, o admitirá la fianza, bajo su responsabilidad, en los casos en que proceda, reservándose proveer sobre el curso de la demanda, presentada que sea la certificación del acto de conciliación."

"*Art.* 1620.—Presentada que fuere por el retrayente certificación del acto de conciliación sin efecto, el juez dará traslado

---

[6] Para los trámites que se observaban en los actos de conciliación y sus efectos, véanse los arts. 459 a 479 de la antigua Ley de Enjuiciamiento Civil de 1886.

A pesar de las persistentes críticas de ilustres tratadistas—véase, Jaime Guasp, "Comentarios a la Ley de Enjuiciamiento Civil", II (2), 11 y 12—la ley de trámites española mantiene su articulado original sobre los actos de conciliación. Del Diccionario de Derecho Privado, de Casso y Cervera, I, 166, citamos:

"La historia de la conciliación es la historia de una gran ilusión desvanecida. ...La práctica demuestra que los particulares buscan la conciliación de sus pretensiones por otros medios, sin acudir a la autoridad judicial mas que después de fracasados aquéllos, y cuando están decididos a agotar todas las acciones judiciales."

de la demanda al comprador, mandando emplazarlo, y entregarle las copias de ella y de los documentos, en la forma prevenida en el juicio ordinario de mayor cuantía."

De los tres artículos transcritos se desprende claramente que para que se tuviera por bien intentado el retracto no era necesario la previa celebración del acto de conciliación, aunque se subordinara su curso ulterior al cumplimiento de esa formalidad.

Al entrar en vigor la Orden General Núm. 118, Serie de 1899, aprobada el 10 de agosto de 1899, se dispuso en su artículo 9 que la justicia civil y los juicios civiles de todas clases se administrarían "en la forma y por los procedimientos establecidos en la misma." No obstante declarar subsistentes varias materias procesales reguladas por la anterior Ley de Enjuiciamiento Civil, dicha Orden General no autorizó la continuación de la vigencia de los actos de conciliación como requisito previo indispensable para litigar ante los tribunales creados por ella.[7] Nuestro Código de Enjuiciamiento Civil de 1904 tampoco los autorizaba. Mucho menos nuestras reglas de práctica civil de 1943 y 1958.

En *Burgos* v. *Báez*, 17 D.P.R. 631, 633 (1911), sobre este punto dijimos:

"En 18 de abril de 1901, fecha en que se alega celebrado el acto de conciliación, ya estaba en todo su vigor la Orden General número 118, serie de 1899, que había variado fundamentalmente el procedimiento civil en Puerto Rico. Los actos previos de conciliación dejaron de ser necesarios para el ejercicio de las acciones civiles y las prescripciones de la antigua ley de enjuiciamiento civil sobre la materia, quedaron virtualmente derogadas."

"Siendo esto así, el acto de conciliación que se alega celebrado en este caso, carece de fuerza como tal y no es necesario inves-

[7] Véanse los arts. 47 a 64 de esa Orden General, en los cuales se regulaba, en forma rápida, sencilla, inteligible y precisa, el procedimiento en una acción civil desde la presentación de la demanda hasta su terminación definitiva, incluyendo reglas para el ofrecimiento y admisión de pruebas.—Compilación de 1941, págs. 11–12.

tigar si se celebró o no con todas las solemnidades que la ley exigía; . . ."

Es cierto que en decisiones posteriores hemos declarado vigentes en Puerto Rico varias disposiciones de la antigua Ley de Enjuiciamiento Civil referentes a las acciones de retracto, especialmente parte de aquellas que establecen condiciones previas o precedentes para intentarlas.(8) Pero lo hemos hecho por el fundamento de tratarse de disposiciones realmente sustantivas, que son esenciales o fundamentales al derecho de retracto que ha seguido reconociendo nuestro Código Civil, como las que exigen la interposición de la demanda dentro de nueve días, la consignación del precio de venta y el compromiso del comunero a no vender durante cuatro años, comprendidas, respectivamente, en los números 1ro., 2do. y 5to. del artículo 1616 de dicha ley adjetiva.

Desde el año 1899 ningún sistema procesal civil adoptado o creado en Puerto Rico le ha dado nueva vida a los actos de conciliación como condición precedente para la tramitación de toda clase de litigios. Podríamos, sin embargo, decir que el único precedente análogo establecido por nuestra Legislatura es la "vista preliminar o acto de conciliación" en ciertas acciones de divorcio cuando hubiere hijos menores de edad, dispuesto por la Ley Núm. 118, aprobada el 7 de mayo de 1942, y que enmendó el artículo 97 de nuestro Código Civil. Quizá alguna semejanza, por su finalidad, puedan tener también con los antiguos actos de conciliación, los realizados en relación con las controversias industriales y agrícolas entre trabajadores y patronos, por las comisiones o servicios de mediación y conciliación creados por las leyes núm.

---

(8) *González* v. *Acha,* 21 D.P.R. 134 (1914); *González* v. *Godreau,* 21 D.P.R. 158 (1914); *Benítez* v. *Díaz,* 28 D.P.R. 673, 676 (1920); *Vellón* v. *Central Pasto Viejo,* 34 D.P.R. 233 (1925); *Central Pasto Viejo* v. *Roig,* 36 D.P.R. 410 (1927); *Vellón* v. *Central Pasto Viejo,* 37 D.P.R. 569 (1927); *Martínez* v. *Pirallo,* 61 D.P.R. 91 (1942); *Llambías* v. *Pagán,* 65 D.P.R. 158 (1914); *Benítez* v. *Díaz,* 28 D.P.R. 673, 676 (1920); *Vellón* v. *Alcaide,* 72 D.P.R. 718 (1951).

36 de 3 de junio de 1919, núm. 15 de 14 de abril de 1931 y núm. 144 de 13 de mayo de 1943.

█ Ordinariamente, aquí no se tiene que dar aviso alguno al demandado antes de radicar un pleito contra éste. La radicación de la demanda es suficiente requerimiento de ser éste necesario. (⁹)

En *González* v. *Godreau et al.*, 21 D.P.R. 158 (1914) sostenía la parte apelada que la demanda sobre retracto legal de comuneros no aducía hechos suficientes para determinar una causa de acción "porque siendo necesario que en toda demanda se alegue la existencia de un derecho y su violación por el demandado para que la corte pueda conceder el remedio correspondiente, debería alegarse que dentro de los nueve días que la ley concede para el retracto se ofreció a los demandados por el demandante el precio de la venta y los otros gastos a que se refiere el artículo 1421 (hoy 1407) del Código Civil, así como que los demandados se negaron a aceptarlos." Sobre este planteamiento, a la página 160, dijimos:

"En cuanto a lo consignado en primer término, diremos que la ley no contiene disposición alguna que exija al condueño que trata de retraer, la obligación de que para que pueda acudir al tribunal a ejercitar su derecho de retracto tenga que ofrecer previamente al comprador el precio de la venta y de los otros gastos a que se refiere la ley. El derecho de retraer el condominio vendido a un extraño no surge porque éste se haya negado a aceptar la oferta que el comprador le haga del precio, sino del hecho de que la venta a un extraño se haya realizado. Y de aceptar la teoría del apelado el derecho de ejercitar la acción de retracto legal nacería cuando el comprador se hubiere negado a recibir el precio y no, como dice el artículo 1427 del Código Civil, desde la inscripción de la venta en el registro de la propiedad, y en su defecto desde que el retrayente hubiera venido en conocimiento de la venta. Por otra parte es tan breve el término que la ley concede para ejercitar el derecho de retracto que no sería posible en muchas oca-

---

(⁹)*Hau* v. *Irizarry*, 50 D.P.R. 368 (1936).

siones el que dentro de nueve días se buscara el comprador para ofrecerle el precio y que se interpusiera la demanda. Tal alegación, pues, no es necesaria, y por consiguiente el que no se alegue no hace insuficiente la demanda."

· Si desde entonces hemos considerado innecesaria toda gestión extrajudicial anterior a la radicación de la demanda para el correcto ejercicio del derecho de retracto legal de comuneros, con mayor razón debemos rechazar la idea de restablecer como una condición precedente para ese ejercicio o para la validez de lo actuado en la acción la previa celebración del extinto acto de conciliación.([10]) Por otra parte, y aun admitiendo la vigencia del trámite del acto de conciliación, los demandados no nos han demostrado: haber sufrido perjuicios por su falta de celebración y la razón para no haber solicitado su celebración ante el tribunal de instancia. Dudamos que en un caso como el presente y los otros dos incoados por las otras dos ventas de condominios hechas a favor de Agudo Cano, en los cuales se han conducido las partes con bastante encono y vehemencia inusitada, y hasta se ha impuesto a la demandante que ha actuado de

---

([10]) Afirma la retrayente en su alegato que "la conferencia con antelación al juicio (pre-trial conference) sustituye el referido acto de conciliación." En cierto sentido quizá pueda encontrarse alguna razón en su afirmación. Pero la conferencia anterior o preliminar al juicio autorizada primeramente por la Núm. 16 de las Reglas de Enjuiciamiento Civil de 1943 y después por la Núm. 37 de las actuales Reglas de Procedimiento Civil de 1958, difiere en muchos aspectos sustanciales del acto de conciliación de la antigua ley procesal: (1) el acto de conciliación se celebraba con antelación al litigio ordinario y lo evitaba en caso de avenencia, la conferencia preliminar actual se celebra después de comenzado y luego de estar trabada la contienda; (2) el primero era obligatorio y su no celebración producía la inadmisión de la demanda; la segunda se celebra a discreción del tribunal; (3) al acto de conciliación concurrían las partes, acompañada "cada cual de un hombre bueno"; a la conferencia preliminar concurren, generalmente, los abogados; (4) el juez que intervenía en el acto era un juez municipal, que una vez celebrado o intentado no intervenía posteriormente en el juicio declarativo; el juez que interviene en la conferencia es uno del mismo tribunal en que se tramita la acción y después puede intervenir en sus demás trámites y hasta resolverlo en sus méritos; (5) el acto producía el efecto de interrumpir la prescripción de la acción a que se refería, la conferencia no

mala fe y que no ha venido al tribunal con las manos limpias, hubiera sido de alguna utilidad práctica la celebración del acto de conciliación o hasta un intento de arreglo amistoso en el curso de una conferencia preliminar al juicio.

## II

■ Por el segundo señalamiento se sostiene que el tribunal a quo erró al dictar sentencia sumaria porque: *a*) Ni la Regla 56 ni las demás Reglas de Enjuiciamiento Civil son aplicables a las acciones de retracto y sí la anterior Ley de Enjuiciamiento Civil de 1881 (sic) en lo relativo a los retractos; *b*) de ser aplicables, existió una controversia respecto a la oferta de la apelada de no vender durante cuatro años el condominio retraído que debió sustanciarse mediante la presentación de la prueba correspondiente; y *c*) la defensa de *estoppel* suscitó otra controversia que impedía se dictara sentencia. Carecen de méritos esos tres fundamentos.

Las Reglas de Enjuiciamiento Civil de 1943, en vigor al iniciarse y resolverse la acción de retracto, en las Núms. 1, 2, 81 y 86 en lo pertinente disponían:

tiene tales efectos, pues se celebra después de comenzada judicialmente la acción; (6) para intentar el acto tenía que acudir el interesado ante el Juez municipal y presentar una "papeleta" firmada por él indicando los nombres, profesión y domicilio de las partes y la pretensión que se dedujera; la conferencia no exige tal formalidad, basta que esté trabada la contienda para que el tribunal pueda ordenarla si la cree necesaria; (7) el propósito único y fundamental del acto de conciliación es el logro de un acuerdo amistoso entre litigantes potenciales, fuera del ámbito del juicio declarativo; el fin de la conferencia es múltiple: simplificar cuestiones litigiosas, enmendar alegaciones, admisiones de hechos y documentos, identidad de testigos, limitación de peritos, nombramiento de comisionado para determinaciones de hecho y, finalmente, para considerar "cualesquiera otras medidas que puedan facilitar la más pronta terminación del pleito", entre las cuales puede encontrarse, desde luego, una posible transacción del litigio o un allanamiento de alguna de las partes o de ambas partes para desistir del mismo o para que se dicte fallo en determinada forma.

La única actuación antes del pleito permitida por la Regla 27 de 1943 y su concordante Regla 24.1 de 1958, es la perpetuación de testimonios para utilizarlos como prueba bajo ciertas condiciones. Cf. *In re Pueblo* v. *United Theatres, Inc.*, 76 D.P.R. 424, 426 (1954).

"Regla 1.—Alcance de estas Reglas.—Estas reglas *rigen el procedimiento* en las cortes de justicia de Puerto Rico *en todas las acciones de carácter civil,* conforme se dispone en la Regla 81. . . ."

"Regla 2.—Forma Unica de Acción.—Habrá una sola forma de acción, la que se conocerá como 'acción civil.' "

"Regla 81.—Aplicabilidad en General.—(a) A qué Procedimientos se Aplican.— Estas reglas *serán aplicables a todas las acciones civiles ordinarias* y a todos los casos de mandamus, injunction, interdictos para retener o recobrar la posesión, tercerías, reclamaciones del derecho de hogar seguro."

"Regla 86.—Fecha en que Empezarán a Regir.—Estas reglas empezarán a regir el día primero de septiembre de 1943. *Se regirán por ellas todos los procedimientos en acciones iniciadas después que las mismas hayan empezado a regir,* . . ." (Enfasis suplido.)

Siendo la acción de retracto en Puerto Rico una acción civil ordinaria, es claro que su tramitación tenía que regirse conforme al procedimiento señalado por esas reglas y por nuestro Código de Enjuiciamiento Civil de 1904 en todo lo que a las mismas no se opusieren. Resolvimos en *Rivera* v. *Corte,* 68 D.P.R. 673, 677 (1948):

". . . La ley adjetiva, o más concretamente, el Código de Enjuiciamiento Civil y las Reglas de Enjuiciamiento Civil cuando son aplicables, tienen fuerza de ley y los que acuden a las cortes de justicia en solicitud de remedios, están obligados a seguirlos mientras se hallen vigentes."

Por disposición de la ley que confirió facultad a este Tribunal Supremo para "regular los procedimientos judiciales en todas las cortes de Puerto Rico con el propósito de simplificar los mismos y promover una rápida administración de justicia"—Ley Núm. 9 de 5 de abril de 1941—tales reglas no derogarían, ampliarían o modificarían los derechos sustantivos de los litigantes. Así continuaron en vigor aquellos preceptos de la antigua Ley de Enjuiciamiento Civil *cuyo carácter sustantivo* habíamos reconocido, entre otros, parte de los requisitos exigidos por su artículo 1616, para darse curso a las demandas sobre retracto. Uno de los funda-

mentos para ello es que el retracto, por su naturaleza privilegiada, limitativa de la facultad dispositiva del comprador y que algunas veces se considera como un instituto perturbador de la libre contratación, no es un derecho absoluto que pueda desligarse de su ejercicio, sino que, por el contrario, se subordina a éste, haciendo depender su efectividad de la circunstancia especial de que llegue a reclamarse en forma y cumpliéndose con las condiciones esenciales del derecho de retracto, entre las cuales se encuentran, *por su naturaleza sustantiva*, las exigidas por ese artículo 1616 en sus números 1ro.,—interponerse la acción dentro de nueve días (¹¹)—2do.—consignación del precio y 5to.—compromiso a no vender durante cuatro años. Los requisitos *procesales* contenidos en los números 3ro., 4to. y 7mo. de ese artículo no los hemos reconocido como vigentes. Al contrario, expresamente hemos decidido que los números 3ro. y 4to. no están vigentes por constituir exigencias procesales en conflicto con nuestras leyes adjetivas. (¹²)

Cuando nuestros organismos legislativos han querido conservar las viejas instituciones jurídicas de índole procesal lo han hecho en forma específica, bien siguiendo el texto antiguo o bien adoptándolo en sustancia. Lo hicieron entre otros, con el procedimiento de desahucio, con la llamada Ley de Procedimientos Legales Especiales en asuntos de la jurisdicción voluntaria y con los interdictos posesorios para recobrar o retener la posesión de propiedad inmueble. Esos organismos no han hecho lo mismo con el trámite especial sobre los retractos contenidos en el Título XIX—artículos

---

(¹¹) Pero no "contados desde el otorgamiento de la escritura", como único punto de partida que da ese antiguo precepto, sino "contados desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta", como expresa el artículo 1414 del Código Civil nuestro.

(¹²) *Benítez* v. *Díaz*, supra, a la pág. 675, respecto al Núm. 3ro.; *Noble* v. *Rodríguez*, supra, a la pág. 490, respecto al Núm. 4to. por referirse a una especie de retracto, el gentilicio, no reconocido por nuestro Código Civil.

1616 a 1628—de la antigua ley procesal, ni con sus demás disposiciones puramente procesales. Ni este Tribunal Supremo en uso de su facultad para adpotar reglas de procedimiento lo ha hecho. La orientación rectora en nuestras últimas decisiones es hacia un procedimiento uniforme en todas las acciones civiles contenciosas hasta donde fuere posible. Cf. *Andino* v. *Fajardo Sugar Co.*, 82 D.P.R 85 (1961).

Debemos, por lo tanto resolver, y resolvemos, que la Regla 56 de las Reglas de Enjuiciamiento Civil de 1943, así como todas esas reglas, eran aplicables a la acción de retracto legal promovida el 10 de junio de 1955 por la retrayente.[13]

 Arguye el ahora recurrente que el compromiso a no vender dentro de cuatro años que se consigna en la demanda creó de por sí una controversia porque debió sustanciarse por la apelada "mediante su formal consentimiento en corte." Tampoco tiene razón en este punto.

Tanto en su demanda original como en la enmendada la retrayente expuso:

"6. La demandante se obliga a no vender la participación retraída dentro de cuatro años."

En la declaración que acompañó u ofreció con su moción solicitando sentencia sumaria expuso bajo juramento que "reproduce por referencia y hace formar parte de la presente declaración todas y cada una de las alegaciones contenidas en las tres demandas de los casos de epígrafe."

En su contestación Agudo Cano nada alegó en contrario a la obligación que asumió en sus demandas la actora "a no vender la participación retraída dentro de cuatro años." Simplemente se limitó a decir que nada tenía que alegar respecto a la consignación de ese compromiso por constituir

---

[13] Desde luego, aquellas condiciones de indispensable y estricto cumplimiento para darse curso a las demandas de retracto y que hasta ahora hemos reconocido en vigor, quedan inalteradas y deberán ser cumplidas conforme a nuestras anteriores decisiones.

ello una conclusión de derecho. En su oposición a la solicitud de sentencia sumaria no suscitó su improcedencia porque ese compromiso creaba una controversia que debía sustanciarse con prueba como ahora, en su alegato, lo hace ante nos. Todo lo que requiere el Núm. 5to. del art. 1616 es:

"Que se comprometa el comunero a no vender la participación del dominio que retraiga, durante cuatro años."

El retracto no debe ejercitarse con fines especulativos. Uno de sus propósitos es la extinción del estado de comunidad, que, como dice Escriche en su Diccionario, "suele ser fuente perenne de discordias." Como una medida para evitar la especulación se le exigía al retrayente antes de 1855 un juramento al efecto de que deseaba la finca para sí y no la retraía para fines especulativos. Esa medida y otras fueron incorporadas a la antigua ley procesal para asegurar el cumplimiento de la prohibición contra traspasos durante esos cuatro años. Siguiendo decisiones anteriores resolvimos en *Noble* v. *Rodríguez*, supra, a la pág. 492, que el retrayente debe alegar ese compromiso en su demanda.[14]

El recurrente no impugnó el compromiso por razón de ser falso o engañoso, o porque detrás del mismo existía un propósito especulativo. Repetimos que se limitó a decir que nada tenía que alegar contra el mismo por constituir una conclusión de derecho. Tal como entendemos lo que constituye una conclusión de derecho, no podemos aceptar que la simple exposición del compromiso a no vender pueda considerarse así. Esa posición del demandado no creó controversia alguna respecto al compromiso a no vender contenido en las demandas. Por otra parte, si la asunción de esa obliga-

---

[14] En el caso de *Noble* no se exponía en la demanda el compromiso a no vender. Concedimos oportunidad al allí retrayente para "enmendar su demanda insertándole la alegación que le falta", con efecto retroactivo a la fecha de la demanda original, al ser devuelto el caso al tribunal de instancia.

En el caso de autos la retrayente contrajo dos veces ese compromiso a no vender y todavía fue más lejos: se acomodó al trámite anterior al 1855 trayéndolo al litigio bajo la solemnidad de un juramento.

ción es un requisito sustantivo necesario en esa acción, la forma en que la misma se contrajo es correcta. En las circunstancias del caso de autos no vemos necesidad de sustanciar en corte un compromiso ya debidamente contraído. Es cierto que la sentencia nada dispuso respecto al mismo. Pero eso no impide que la modifiquemos en debida forma.

■ Ningún mérito encontramos en la alegación del recurrente sobre la no efectividad de la consignación del precio a base de la posibilidad de que la retrayente pueda retirar la suma por tal concepto consignada. Una vez consignado el precio no puede retirarse del tribunal a menos que el retrayente corra el riesgo de que su acción pueda ser desestimada. Para retirarla tendría que oirse a la otra parte a cuyo favor se ha consignado.

■ Tampoco creó la alegada defensa de estoppel controversia alguna respecto a la acción de retracto. En primer lugar, los hechos en que esa defensa descansa ocurrieron con posterioridad al inicio de la acción; en segundo lugar, esos hechos no se relacionan con el condominio objeto de la acción de retracto, sino que se refieren a las alegadas "conversaciones" que tuvo Agudo Cano "con la demandante para adquirir por compra el *condominio...que ella tiene sobre la finca"*; en tercer lugar, los actos realizados por Juan R. Zalduondo Grier no son actos propios de la demandante; ni aún se alega que ella los conocía, ni que hizo al demandado creer en la verdad de los mismos.

### III

■ En su tercer señalamiento los recurrentes sostienen que erró el tribunal a quo al sustituir a los apelantes como parte demandada y al dictar sentencia contra ellos, porque (a) la demanda contra Iturregui no aducía hechos constitutivos de una causa de acción, y (b) porque esa demanda había perdido toda efectividad a la fecha de la sustitución de partes demandadas y tal sustitución fue hecha fuera de término.

La demanda original es suficiente en derecho. Conforme a nuestra reiterada jurisprudencia fueron alegadas todas las circunstancias y hechos necesarios para el ejercicio de la acción de retracto legal de comuneros.[15] Se dedujo al séptimo día contado de la fecha de la primera venta y se verificó la total consignación del precio de la venta en ese mismo día.

▉ Si bien la demandante no actuó con la diligencia debida en el procedimiento al no emplazar prontamente al demandado original, lo cierto es que la acción, por esa causa, no perdió su efectividad como afirma el recurrente. Estuve siempre pendiente de su tramitación[16] y el propio recurrente, como ya relatamos, aceptó que estaba pendiente cuando compró a Iturregui.

▉ Ya se tratara de una demanda enmendada o ya de una demanda supletoria, lo cierto es que no se ejercitaba en la misma una nueva causa de acción, sino la misma y original causa de acción en la cual, y con motivo de la segunda venta a Agudo Cano, el tribunal ordenó que el demandado original fuese sustituido por el nuevo adquirente. La venta que causó el ejercicio del derecho de retracto fue la primera venta, no la segunda. Ejercitada la acción dentro del término de nueve días, la ley no exige que se tenga que traer como partes demandadas a sucesivos compradores dentro de un nuevo término de nueve días contados desde la fecha de cada trasmisión subsiguiente.

▉ Si la acción había perdido su efectividad, si la sustitución estuvo correcta o incorrectamente hecha, o si en vez de una demanda enmendada se debió haber presentado una complementaria o suplementaria, son circunstancias que, por la propia acción de Agudo Cano, dejaron de tener alguna importancia, si es que alguna vez la tuvieron. A pesar de la

---

[15] Véanse *Fuertes* v. *Arzón,* 81 D.P.R. 491, 497 (1959) y los casos allí citados.

[16] Artículo 348, Código de Enjuiciamiento Civil; *Torres* v. *Cabrera,* 73 D.P.R. 762, 765 (1952) ; *Lawton* v. *Rodríguez,* 38 D.P.R. 38, 47 (1928).

orden del tribunal de instancia constituyendo a él y a su esposa como únicas partes demandadas en sustitución de las originalmente demandadas, él solicitó del tribunal que se le permitiera intervenir, alegando entre otras cosas y suplicando como sigue:

"4. *Que vuestro peticionario es dueño en la actualidad de los condominios* (sic) *que en dicha finca tenía el demandado Nicolás Iturregui* y por lo tanto cualquier sentencia dictada en el caso puede afectarle adversamente en cuanto a su título sobre los condominios (sic) objeto de retracto en este caso.

"5. Que vuestro interventor tiene una buena y justa defensa en sus méritos en la acción principal ya que en cuanto a él se refiere la misma está fatalmente prescrita.

"POR TODO LO CUAL al Hon. Tribunal solicita que se autorice a vuestro peticionario a intervenir *como parte demandada en esta acción,* y se le tenga como tal autorizándole a radicar las alegaciones que se acompañan a esta solicitud." Énfasis suplido.

El permiso para intervenir como parte demandada le fue concedido y como tal presentó su contestación a la demanda enmendada. Lo único que no admitió de la misma, como antes dijimos, fue la condición de extraño de Iturregui a la fecha en que le compró a éste, es decir, al 22 de diciembre de 1955.

La prescripción extintiva que invocó el recurrente no puede prosperar o constituir obstáculo para que se dictara sentencia sumariamente porque esa defensa se asienta sobre una premisa artificiosa. Según afirma, cuando por orden judicial dictada en la acción de retracto él sustituyó a Iturregui como parte demandada y se presentó una demanda enmendada con motivo de la venta pendente litis a su favor, se inició un nuevo pleito de retracto contra él, y como para entonces había transcurrido "50 días después de la venta Iturregui-Agudo, 43 días luego de la presentación por Agudo de sus títulos, y 14 días después de su inscripción definitiva . . . los esfuerzos procesales de la apelada como encaminados

a establecer una nueva demanda, la misma resultaría fatalmente defectuosa por haberse radicado fuera de término."

█ Se olvida el recurrente que el retracto legal se da a favor de un comunero contra un extraño que ha comprado a otro comunero, pero no en relación con posteriores ventas celebradas entre extraños y que conforme al artículo 421 (2) del Código de Enjuiciamiento Civil la sentencia "en cuanto a la materia directamente juzgada, será concluyente entre las partes y sus sucesores en interés por título adquirido posteriormente al comienzo de la acción." Y él, no solamente fue un cesionario o comprador pendiente el litigio, sino que fue la parte demandada contra la cual realmente se litigó. No se inició una nueva y distinta acción de retracto legal contra él; únicamente se continuó la ya promovida en debida forma dentro de los nueve días contados desde la fecha de la primera venta de Milagros Zalduondo Cruz a Nicolás Iturregui.

## IV

█ No erró el tribunal de instancia al permitir que el pleito procediera contra Agudo Cano y su esposa, eliminándose a Iturregui del mismo.

Mientras estaba pendiente la acción real ocurrió la cesión del interés que Iturregui tenía sobre el condominio retraído. Esa trasmisión pendiente lite no extinguió, terminó ni causó la caducidad de la acción. Ésta continuaba o subsistía a pesar del nuevo cambio de titular, amparando un derecho concedido por ley y ejercitado oportunamente. La persecución de la participación indivisa no se esfumó en el momento de la segunda venta. Bajo las disposiciones, entonces en vigor, del art. 69 del Código de Enjuiciamiento Civil y la Regla 25 (c) de 1943, ([17]) y nuestras decisiones en

---

([17]) En lo aplicable, dice el Art. 69 citado:

"Artículo 69.—Una acción o procedimiento no termina . . . por la cesión de cualquier acción o procedimiento, siempre que la causa de uno u otra subsista o continúe. . . . En caso de cualquiera otra cesión del interés la acción o procedimiento podrá continuarse por la parte iniciadora,

*Rivera* v. *Central Pasto Viejo, Inc.*, 44 D.P.R. 522, 524 (1933); *Pérez Casalduc* v. *Díaz Mediavilla*, 41 D.P.R. 734, 735 (1931) y *Arrache* v. *Carlsson*, 33 D.P.R. 250, 253 (1924), la retrayente podía optar por continuarla contra Iturregui, trayendo a Agudo Cano al pleito para ser oído, desde luego, o por pedir que aquél fuese sustituido para todos los fines por éste. Con autorización del tribunal optó por la sustitución.

Por efectos de esa sustitución quedó el demandado original eliminado del pleito. Si Agudo Cano, por su voluntad quiso ocupar el lugar de Iturregui, y, como dijo en su petición de intervención *"es dueño en la actualidad* de los condominios (sic) que en dicha finca *tenía* el demandado Nicolás Iturregui"*, habiendo perdido éste toda relación inmediata y mediata con la cosa que vendió a tal punto que sus facultades dominicales sobre ese condominio se encuentran absoluta y definitivamente agotadas; si por efecto de esa trasmisión incondicional "El comprador sustituye al vendedor en todos sus derechos y acciones", como preceptúa el art. 1400 de nuestro Código Civil, y si la finalidad del retracto no es otra que el otorgamiento del título a favor del retrayente victorioso y la entrega material de la posesión del condominio objeto del mismo que hoy él disfruta, no vemos razón alguna para mantener a Iturregui, quien no puede ya traspasar un título que no ostenta ni entregar una posesión de un derecho del cual no goza, como una parte necesaria en la acción de retracto. El tribunal de instancia estaba en condiciones de llegar a una completa resolución de la con-

---

o la corte permitir que la persona a quien se hizo el traspaso quede subrogada en la acción o procedimiento."

La Regla 25(c) de 1943—incorporada en las de 1958 como la Regla 22.3 con ligeros cambios de redacción—dice:

*"Cesión de Interés.*—En caso de cualquier cesión de interés, podrá continuarse la acción por o contra la parte original, a menos que la corte, previa moción al efecto, disponga que el cesionario sea sustituido en la acción o acumulado a la parte original. La moción será notificada conforme se dispone en la subdivisión (a) de esta Regla."

troversia sin la presencia de Iturregui y el fallo puede ser cumplido plenamente sin la intervención de éste.

Es cierto que el Tribunal Supremo español ha resuelto en Sentencias de 11 de octubre de 1905 y 8 de junio de 1906 que la acción debe dirigirse conjuntamente contra el comprador primitivo y contra el posterior. Sin embargo, en su Sentencia del 28 de abril de 1953, entre otras cosas, resolvió:

"(3) Si el primer adquirente enajenase la finca objeto de retracto antes de que tenga lugar éste, perdió la propiedad y carece de personalidad y derecho para transmitirla al retrayente que la reclama, sin que el nuevo comprador pueda ser despojado de su dominio sin ser oído y vencido en juicio. (4) El fin del retracto, como acción real que es, consiste en conseguir la propiedad de la finca disfrutada donde quiera que se halle, de manera que el último adquirente, en caso de haberlos sucesivos, sea obligado a otorgar la escritura de subrogación que el retracto exige. (5) La naturaleza del retracto legal y la finalidad de interés social para que fue instituido, no permiten que el ejercicio de la acción a que se da derecho, sea satisfecha de otra manera que no sea con la entrega efectiva de la cosa retraída." Sentencia del Tribunal Supremo de España de 28 de abril de 1953; Revista General de Legislación y Jurisprudencia, Tomo 42—1953—pág. 777."

Si la venta a Agudo Cano no hubiera sido absoluta e incondicional, como si, por ejemplo, se hubiera trasmitido a éste únicamente el dominio útil, reservándose Iturregui el directo o cualquier otra facultad o derecho de disposición o de garantía, Iturregui, claramente continuaba vinculado a la cosa retraída y su eliminación del pleito no hubiera podido decretarse. [18]

---

[18] El malogrado jurista español Narciso Riaza, en su muy citada obra "Los Retractos, Errores dominantes acerca de la Materia", Ed. Reus, 1919, a las páginas 292–294, dice:

"Como corolario de tan generales doctrinas se sienta aquella otra según la que la acción de retracto legal se dirige contra el primer adquirente, quien otorga la escritura de venta al que retrae.

"No llego en verdad a adivinar de dónde puede haber sido sacado esto, porque si se me dijera que el Código Civil parece referirse a una primera venta, referencia que no encuentro, contestaría que no hay precepto en el

No nos demuestra el recurrente que con la eliminación de Iturregui se le causara algún perjuicio, ni que el tribunal sentenciador cometiera alguna injusticia. Al poner reparos a la moción sobre sentencia sumaria no alegó que era necesaria la presencia en el pleito de Iturregui para poder resolverla. No se cometió este cuarto error señalado.

## V

¿Adquirió Agudo Cano la condición de tercero hipotecario? Ésta es la cuestión más seria que presenta este recurso. Si la adquirió conforme a las circunstancias de hecho concurrentes y al derecho hipotecario nuestro aplicable, la retroacción iniciada el 10 de junio de 1955 no le afecta

---

Código, por lo menos yo no lo conozco, que prevea el caso de posteriores ventas a la que origina el derecho de retracto, como tampoco habla de rescisiones de los sucesivos contratos si se celebran varios.

"Yo me encuentro con que por el hecho de una venta nace un derecho real, que constituyéndose respecto del objeto a modo de un imperativo categórico, puede ser ejercitado contra cualquiera que posea la cosa, derecho que *a priori* no tiene sujeto de la obligación concreto y determinado más que el que resulte actual poseedor; actual poseedor que es a quien en último término importa la acción esgrimida. Los anteriores y los nuevos adquirentes de la cosa se han ido convirtiendo en posteriores y sucesivos vendedores que se hallan respecto del objeto en la misma, en idéntica situación que Mucius Scaevola nos decía se encontraba el primer enajenante; que *no les importa* que el retrayente sustituya o no al último comprador, porque no se les impuso un determinado contratante y porque una vez consumadas cada una de las ventas nuevas, cada uno de los vendedores no puede ostentar derecho alguno. Me encuentro con que las demandas dirigidas a rescatar bienes, deben entablarse y dirigirse contra los poseedores actuales, que son los únicos que pueden dar efectividad a nuestro derecho declarado. Luego si cuando vayamos a ejercitar una subrogación vemos la cosa en poder de una determinada persona, que ni aun por su cualidad de tercero puede ponernos obstáculo alguno como luego veremos; ¿por qué han de preocuparnos seis o seiscientas ventas anteriores que se celebraron con posterioridad al nacimiento del derecho? Si al fin y al cabo no hemos de deshacer ninguna relación de las creadas, sino que todas se mantendrán incólumes *incluso la última* en que se verificará la subrogación, la sustitución, la incrustación del retrayente en el comprador último, ¿a qué viene hablar de que toda esa cadena de ventas hay que deshacerla y llegar al primer adquirente para que éste consienta la subrogación, si éste no tendría nunca por qué oponerse porque ningún derecho puede alegar en contra, ningún perjuicio se le puede causar, *no le importa* en nada y para nada el derecho que se quiere hacer valer?

y el fallo recurrido debe revocarse. En caso contrario, debemos sostenerlo.

Volvamos de nuevo a los hechos. Para el 3 de junio de 1955 la finca perteneciente a los siete hermanos Zalduondo Cruz y Zalduondo Díaz figuraba inscrita en nombre de ellos, por partes iguales proindivisas, en el Registro de la Propiedad y por título hereditario. En ese día la comunera Milagros Zalduondo Cruz vende su condominio de una séptima parte a Nicolás Iturregui y su esposa Ana Margarida. El

---

"Se dirá que es necesario rescindir las posteriores enajenaciones para llegar a la primera, porque el Código preceptúa que el retracto legal es el derecho de subrogarse en lugar *del que adquiere una cosa,* y el que adquiere el objeto en condiciones para originar el retracto es el primer comprador, *en cuyo lugar, precisamente,* es en el que la ley quiere que se verifique la subrogación. Se rebate esta afirmación diciendo: 1.—Que el propósito por la ley perseguido con la institución es lo primordial, lo capital y el propósito igual se consigue subrogándose en lugar del primero que en lugar del último. 2.—Que las mismas razones existen para que el Código haya querido referirse a que *siempre, en todo caso,* el subrogado sea el adquirente primero, como para sostener que el precepto del art. 1.521 legisla para el supuesto de que el retracto se verifique habiéndose producido una venta sola, la en que nace la facultad de subrogación, y yo más me inclino a creer que el Código no llegó a prever el caso de que la cosa se encontrara muy lejos del primer adquirente cuando se quiere hacer efectivo el retracto. 3.—Que en el supuesto de varias posteriores ventas, si fuere *imprescindible* llevar la cosa al comprador primero, podrían darse muchos, pero muchísimos casos, en los que no pudiera hacerse esa especie de retracción si tuviéramos que llevarla a cabo desarrollando una verdadera rescisión por cada venta posterior que se hubiese celebrado, casos de imposibilidad que serían todos aquéllos en los que varios o uno solo de los que adquirieron la cosa y a su vez la traspasaron se viera imposibilitado de devolver el precio al que fue su comprador, en cuyo supuesto, no problemático, sino muy posible, no habría medio de rescindir su contrato y, sin embargo, no es dudoso que se aceptaría la pretensión del retrayente. 4.—Que el derecho definido en el artículo 1.521 es un *derecho real,* y, por tanto, persigue la finca donde quiera que se encuentre y allí donde la halla allí la recoge. 5.—Que, por lo mismo, según tiene reiteradamente sentado el Tribunal Supremo, las contingencias posteriores al hecho de la venta primera, originadora del derecho a retraer, no pueden afectar al retrayente si éste pide la declaración de su facultad en forma y tiempo pertinentes. 6.—Que no hay ninguna disposición que prohiba al primer comprador vender lo que adquiere cuando y como le acomode, pues el dominio adquirido no tiene limitación alguna ni voluntaria ni legal. 7.—Que puede causarse un perjuicio al primer comprador, si, no poseyendo la cosa, le obligan a que recoja el precio del primer contrato. Y 8.—Que no hay precepto que disponga la rescisión de los contratos anteriores."

10 de junio de 1955, la comunera Juanita Zalduondo Díaz promueve su acción de retracto legal contra los esposos Iturregui-Margarida. El 22 de diciembre de 1955, encontrándose pendiente la acción de retracto y sin que el título de compra del condominio otorgado en favor de los esposos Iturregui-Margarida figurara inscrito en el Registro, (ni aún estaba presentado para su inscripción) estos esposos demandados venden a Ramón Agudo Cano y a su esposa Raquel Baker el condominio objeto de la acción. Agudo Cano presenta para su inscripción el título de Iturregui, su causante en derecho, y, además, el de la nueva venta a su favor, el 29 de diciembre de 1955, es decir, siete días después de esa segunda venta. El 26 de enero de 1956 la demandante solicita y así lo ordena el tribunal a quo, que los demandados originales fueran sustituidos como partes demandadas por los subadquirentes esposos Agudo-Baker. Un día después, el 27 de enero de 1956, se inscriben en el Registro tanto la primera venta a Iturregui como la segunda de éste a Agudo Cano.

Vamos ahora al derecho aplicable. Entre las causas para la resolución de la venta se encuentra el retracto legal. Art. 1395, Código Civil.([19]) Este es el derecho de subro-

([19]) Por disponerlo así nuestro Derecho constituido, legislado y positivo, tenemos que aceptar el retracto legal como causa resolutoria de la compraventa. Pero en el terreno constituyente y abstracto, propiamente y en su genuino sentido, es un derecho de subrogación o de preferencia adquisitiva que dista mucho de causar una verdadera resolución de la compraventa que origina el derecho de retracto. Esa venta, ganada la acción de retracto, no se deshace o destruye jurídicamente, ni las cosas tornan a su estado primitivo. Lo que entonces ocurre es un simple cambio del sujeto adquirente, pues lo que reclama el demandante en el juicio de retracto es su puesto de comprador, es el verdadero comprador por mandato de ley y no quien figura en el contrato. Como la sal en el agua, la personalidad del comprador contractual se diluye al decretarse el retracto. En lugar del extraño que compró pasa a ocuparlo el retrayente victorioso. El contrato que causó la acción permanece inalterado.

Claro que no se puede decir lo mismo en cuanto al retracto convencional, pues en ese caso se trata de una verdadera condición resolutoria unida a un contrato de compraventa, en virtud de la que, llegado el momento de cumplirse, la venta se rescinde, volviendo las cosas, entre vendedor y comprador, a su primitivo estado.

garse, con las mismas condiciones estipuladas en el contrato, en lugar del que adquiere una cosa por compra o dación en pago. Art. 1411, id. Se concede tal derecho de subrogación, o de preferencia o prelación adquisitiva al copropietario de una cosa común en el caso de enajenarse a un extraño la parte de todos los demás condueños o de alguno de ellos. Artículo 1413.

Sobre el retracto legal nuestro Código Civil no contiene disposición alguna para el caso de sucesivas ventas; legisla para el supuesto de haberse celebrado un solo acto enajenatorio de dominio. Sin embargo, tratándose del convencional dispone, en su artículo 1399, que se podrá ejercitar la acción "contra todo poseedor que traiga su derecho del comprador, aunque en el segundo contrato no se haya hecho mención del retracto convencional; salvo lo dispuesto en la Ley Hipotecaria respecto de terceros."

Nuestra Ley Hipotecaria en sus artículos 36 y 38, en lo pertinente, dispone:

*"Artículo* 36.—Las acciones rescisorias y resolutorias no se darán contra tercero que haya inscrito los títulos de sus respectivos derechos conforme a lo prevenido en esta ley.

*"Artículo* 38.—En consecuencia de lo dispuesto en el artículo 36, no se anularán ni rescindirán los actos o contratos en perjuicio de tercero que haya inscrito su derecho, por ninguna de las causas siguientes:

"1. . . . . . . . . . . . .
"2. Por causa de retracto legal en la venta o derecho de tanteo en la enfiteusis."

En sus "Lecciones de Derecho Hipotecario", I, 248, Muñoz Morales, comentando los efectos de la acción de retracto respecto a terceros, se expresa así:

"Como puede notarse por el texto de los artículos citados (arts. 1020, retracto de coherederos; 1412, retracto de comuneros; 1413, retracto de colindantes; y 1529 y 1530, derecho de tanteo y retracto en la enfiteusis) éstas son condiciones o mejor dicho, recursos legales que no constan explícitamente del

Registro; y en este particular dice Morell refiriéndose a las donaciones que el criterio legal en éstos y otros casos es siempre el mismo, que no basta que un artículo determinado de una ley conceda el derecho de rescindir o resolver o revocar; que proceda la acción de la ley o de la voluntad, no perjudica a tercero si la causa no consta explícitamente en el Registro y en su oportuna Inscripción." [20]

Sin embargo, el Código Civil en su artículo 1414 modifica el criterio hipotecario, al disponer que el derecho de retracto legal podrá ejercitarse dentro de nueve días "contados desde la inscripción en el registro." De modo que tanto el primer

---

[20] La primitiva Ley Hipotecaria española de 1861, la subsiguiente de 1869 y la de 1878 que rigió aquí desde 1880, mantenían en sus textos igual criterio respecto a los efectos de las acciones rescisorias y resolutorias en cuanto a terceros. Pero la española de 1909, y la de 1944, en su artículo 37, en contrario disponen que las acciones de retracto legal, "en los casos y términos que las Leyes establecen", se darán contra tercero que haya inscrito los títulos de sus respectivos derechos.

Con arreglo a este moderno criterio se dice en la Resolución de 29 de octubre de 1946, de la Dirección General de los Registros (16 Jur. Civ. 2da. serie, 229):

"El derecho de retracto legal, como limitación del dominio, obra siempre con la máxima eficacia frente a los terceros adquirentes del inmueble, hasta el punto de que respecto del mismo no actúan ciertos principios hipotecarios, básicos en nuestro sistema, como el de fe pública registral, que se paraliza, y, en definitiva, quedan inermes los enérgicos resortes de defensa que la inscripción lleva de ordinario consigo, todo lo cual constituye la excepción unánimemente reconocida y declarada por el art. 37 de la Ley Hipotecaria en su número tercero."

Badenes Gasset, en su obra "La Preferencia Adquisitiva en el Derecho Español, Editorial Bosch, Barcelona (1958), págs. 80-82, dice:

"*Efectos con relación a tercero.*—Según la Ley Hipotecaria de 1869, las acciones rescisorias y resolutorias [61] no podían perjudicar a tercero que hubiese inscrito su derecho (artículos 36 y 38) a menos que dichas acciones debieran su origen a causas que constaran explícitamente en el Registro (art. 37).

"Publicado el Código Civil, creyeron la mayoría de autores (Sánchez Román, Oliver) que el art. 38 de la Ley Hipotecaria resultaba modificado por el art. 1.639 del Código que al tratar del censo enfitéutico dispone que si se hubiese realizado la enajenación sin el previo aviso que ordena el artículo 1.637, el dueño directo y en su caso el útil podrán ejercitar la acción de retracto en todo tiempo hasta que transcurra un año, contado desde que la enajenación se inscriba en el Registro de la Propiedad.

"En contra de este criterio decía Manresa que el Código Civil y la Ley Hipotecaria rigen cada uno dentro de su propia esfera de acción. Los

comprador como los subadquirentes que hayan inscrito sus títulos dentro de esos nueve días posteriores a la inscripción de la primera venta están afectados por la acción de retracto ejercitada dentro de esos nueve días. No lo estarán si una vez inscrita la primera adquisición los posteriores compradores han adquirido e inscrito sus títulos después de esos nueve días, aun cuando la acción de retracto se haya promovido dentro de ese término contra el primer comprador. Desde luego, si el retrayente fue precavido y obtuvo oportunamente la anotación de aviso de demanda en el registro conforme al artículo 91 del Código de Enjuiciamiento Civil o la anotación preventiva de su reclamación con arreglo al

arts. 36 a 38 de la Ley Hipotecaria tratan de efectos de la inscripción, con relación a terceros. El art. 608 del Código expresa claramente que todo lo relativo a los efectos de la inscripción se rige por la Ley Hipotecaria; luego el art. 1.639 no pudo modificar, en poco ni en mucho, lo que dicha ley disponía sobre los efectos de la inscripción de enajenaciones, a favor de un tercero cuando no consta explícitamente en el Registro la posibilidad de su resolución.

"La ley Hipotecaria de 1909, aclaró esta cuestión, exceptuando en el art. 37, núm. 2 (hoy núm. 3) del general precepto contenido en el art. 36 (hoy 37, párrafo 1), las acciones de retracto legal, en los casos y términos que las leyes establecen, sin exigir que esa condición resolutoria conste explícitamente en el Registro. Hoy, por tanto y dentro del término fijado para el retracto legal, pueden resolverse—como advierte Morell en términos de generalidad—cuantas enajenaciones se hayan realizado, medie o no medie inscripción, quedando sin efecto dichas enajenaciones y cuantos derechos reales puedan haberse constituido en ese período.

"La indicada reforma es, a juicio de Scaevola, 'una innovación contraria a los buenos principios de Derecho Hipotecario'; pero Valverde, en cambio, la estima beneficiosa. Ha obedecido—afirma—a dar plena efectividad al derecho de retracto que otorga el Código Civil.([62])

"En la actualidad, por tanto, ya no puede burlarse el derecho del retrayente, lo que posibilitaba la antigua ley, pues podía el primer comprador vender inmediatamente la cosa comprada a otra persona, o incluso simular la venta, y una vez ésta inscrita, el retracto no podía ejercitarse.

"Escolio 61.—La acción de retracto legal se considera por la legislación hipotecaria como rescisoria, revocatoria o resolutoria, pero ya hemos advertido que estimamos más correcta la doctrina que afirma que el contrato respecto del que se ejercita el retracto permanece inalterable.

"Escolio 62.—La acción de retracto se da contra tercero, aun no constando en el Registro la causa de resolución (sentencia de 24 de junio de 1954); en materia de retracto legal no juega el concepto de tercero (sentencia de 29 de octubre de 1946 y 4 de octubre de 1950)."

artículo 42 de la Ley Hipotecaria, o el aseguramiento de la sentencia mediante la prohibición de enajenar, esos subadquirentes no podrán oponerse a la retroacción invocando su condición de terceros hipotecarios.[21]

Ahora bien, Ramón Agudo Cano, su esposa Raquel Baker y la sociedad conyugal integrada por ellos, además de ser personas extrañas a la comunidad Zalduondo Cruz y Zalduondo Díaz, como lo eran sus antecesores en título los esposos Iturregui-Margarida, no ostentan, respecto a la retrayente, condición alguna de terceros hipotecarios, ni tienen derecho alguno a la protección registral.

Agudo Cano no adquirió su título sobre el condominio retraído de persona alguna que lo tuviera inscrito en el Registro. La transmisión a su favor se realizó el 22 de diciembre de 1955. Para esa fecha ni se había presentado para su inscripción la venta de Milagros Zalduondo Cruz a favor de Iturregui y la titular del condominio, según el Registro, lo era Milagros Zalduondo Cruz. Aún más, Agudo Cano y su esposa fueron hechos parte demandada en la acción antes de inscribirse el título de ellos.

Reiteradamente hemos resuelto que no es tercero hipotecario aquél que ha adquirido título de persona que, a la fecha de su otorgamiento, no aparece en el Registro con derecho para otorgarlo.[22]

---

[21] No existe indicación en los autos de que la retrayente hubiera tomado alguna de esas precauciones legales.

[22] Véanse *Monserrate* v. *Lópes*, 80 D.P.R. 491, 503 (1958); *Pérez* v. *Cancel*, 76 D.P.R. 667, 676 (1954); *Olmedo* v. *Balbín*, 69 D.P.R. 588, 592 (1949); *Lizardi* v. *Caballero*, 65 D.P.R. 83, 89 (1945).

En este último caso, a la página 89, se dice:

"Comentando Muñoz Morales en sus Anotaciones a la Ley Hipotecaria de Puerto Rico el concepto de tercero a que se refiere este artículo dice a la página 256 que 'es aquél que adquiere de la persona que según el Registro aparezca con derecho para ello; es el que no tomó parte en el acto o contrato que se declaró nulo; es el que habiendo adquirido así inscribió luego su derecho; es el definido en el artículo 27; y son también terceros los sucesivos adquirentes, pero todos han de fundar su derecho en un título inscrito para poder disfrutar del beneficio o excepción del art. 34 bajo el supuesto o condición de que la causa de nulidad no conste claramente en la inscripción anulada.' "

Podrá considerarse a Agudo Cano como un tercero de acuerdo con el Derecho civil que no pudo obtener más derechos que los que tenía Iturregui, su antecesor titular.

Cuando adquirió Iturregui su título sobre el condominio él sabía por las constancias del Registro que los otros condominios de la finca pertenecían a los demás hermanos de su trasmitente, entre ellos Juanita Zalduondo Díaz y que cada uno de ellos o todos tenían un derecho preferente a él para adquirirlo. Iturregui no gestionó la protección registral para su título, a pesar de que el Registro lo alertaba respecto al estado de comunidad sobre la finca cuando él compró. Tenía que darse cuenta de la amenaza o posibilidad de la acción resolutoria que la ley le reconocía a los demás condueños y apreciar bien la naturaleza insegura del derecho que adquiría. El derecho de propiedad que se le trasmitió el 3 de junio de 1955 sobre el condominio, mientras no caducara el derecho de retracto, carecía de firmeza jurídica, era revocable y su libertad para disponer a su vez del mismo estaba atada o sujeta a la posibilidad del ejercicio de la acción de retracto, no por un solo comunero sino por seis. En esa situación en cualquier venta que hiciera Iturregui su comprador también adquiría bajo la precariedad de una condición resolutoria.

La posibilidad del ejercicio del retracto se convirtió en realidad el 10 de junio siguiente cuando la demandante, cumpliendo con todos los requisitos legales indispensables o necesarios, dedujo su demanda contra Iturregui. Ejercitado en tiempo y forma ese derecho, nacido al realizarse la primera venta, la posibilidad de adquirir firmeza el derecho de Iturregui había disminuido grandemente. Ese ejercicio hizo ineficaz la primera venta a favor de Iturregui, ya que, en último análisis, en el retracto el comprador resulta haber actuado como representante del retrayente. El acto obstativo para la consolidación jurídica de su título se había realizado por voluntad de una comunera. Si Iturregui solamente

ostentaba un título inestable o revocable él no podía trasmitir un título irrevocable, firme o de mejor condición jurídica a Agudo Cano. La revocabilidad temporal del derecho de Iturregui repercutió en el acto del segundo traspaso.

Aquél compra sin que su vendedor tuviera inscrito su derecho. El estado registral para él en la fecha de la compra era el mismo que existía al adquirir Iturregui, es decir, todavía aparecía claramente del Registro que la finca pertenecía en común a los herederos de Luis Zalduondo Veve. La condición de ser Iturregui un extraño a la comunidad no había desaparecido. Agudo Cano aparentemente no investigó si esos herederos o alguno de ellos había instado acción de retracto contra Iturregui. Compró pendiente la acción de retracto (así lo admitió en su contestación) y sujeto a los resultados de la misma.

La naturaleza de la acción de retracto es real. Persigue a la cosa donde quiera que ésta se encuentre. Como se dice en 95 Jur. Civ. 929, en el fondo no es otra cosa que una acción reivindicatoria. ([23]) Al vender Iturregui a Agudo Cano, aquél perdió toda relación inmediata o mediata sobre el condominio trasmitido. La trasmisión que hizo Iturregui a

---

([23]) El artículo 290 del Código de Enjuiciamiento Civil disponía:

"Artículo 290.—La acción para reivindicar propiedad real contra la persona en cuya posesión estuviere, no puede ser perjudicada por ninguna enajenación que haga tal persona antes o después del comienzo del ejercicio de la acción."

La declaración principal referente a la entrega del condominio y otorgamiento de la escritura debe hacerse contra el que está en posesión de la finca o derecho trasmitido. Sentencia de 27 de febrero de 1954, Tribunal Supremo de España; J. Santamaría, "Comentarios al Código civil" II, 552.

En Su Digesto, VI, 284, dice Ricardo Oyuelos:

"(a) Acción de retracto.—Tiene fundamental y esencialmente el carácter de real, puesto que el objeto es adquirir la propiedad de una finca vendida por el primitivo dueño a un tercero, adquisición que no puede lograrse sino de quien la tenga en su poder a título de dueño, y porque resultaría ineficaz el mero derecho declarado a favor del retrayente, si el demandado no pudiese hacer entrega de la cosa por no estar ya bajo su dominio ni cumplir con ninguna de las obligaciones de subrogación que son consecuencia del éxito de la acción de retracto. ([1])

"([1]) Sentencias de 11 oct. 1905 y 11 mayo 1912."

Agudo Cano, en lo que respecta a ellos, es en derecho abso-
luta, incondicional e irresoluble; por virtud del contrato del
23 de diciembre de 1955, el condominio no puede volver a
poder de Iturregui quien al vender agotó las facultades que
le pertenecían como titular del condominio litigioso. Siendo
Agudo Cano el último y actual poseedor de la cosa retraída,
para darle efectividad al derecho nacido y ejercitado con-
forme a ley, él está sujeto desde que adquirió, a las conse-
cuencias de la acción que estaba entonces en trámite.

■ El ejercicio y la eficacia de la acción de retracto no
está subordinada a, ni puede ceder ante la alegada buena fe
de un comprador pendente lite. El comprador de parte de una
cosa poseída en común y proindiviso por varias personas no
debe presumir que los demás condueños jamás hayan ejerci-
tado en forma su preferencia adquisitiva. El simple hecho
de adquirir de un titular que no se había ocupado de inscribir
su condominio era suficiente para ponerlo en alerta de un
posible ejercicio en su contra de la acción de retracto. El
debió haber tenido en cuenta que adquiría un derecho inse-
guro, revocable o resoluble durante algún tiempo, y que no
podía depender simplemente de la buena fe que privadamente
pudo inspirarle su trasmitente que no se había ocupado o
demoraba inscribir oportunamente su título y que con ello
evitaba una publicidad que podía perjudicarle[24] por lo que
debe sufrir las consecuencias de sus propios actos. Juanita
Zalduondo Díaz, cuya condición de condueña claramente re-
sultaba del Registro, no hizo nada más que ejercitar a tiempo
y en debida forma, y con buen éxito, el derecho de retracto
que le reconocía nuestro Código Civil y que, en las circuns-

---

[24] Disponía el artículo 1618 de la Ley de Enjuiciamiento Civil antigua:
"Art. 1.618.—Si la venta se hubiere ocultado con malicia, el término
de los nueve días no empezará a correr hasta el siguiente al en que se
acreditare que el retrayente ha tenido conocimiento de ella.

"Para dicho efecto se tendrá por maliciosa la ocultación de la venta
cuando no se hubiere inscrito oportunamente en el Registro de la propiedad.
En este caso se contará el término desde la presentación de la escritura de
venta en el Registro."

tancias del caso era tan obligatorio para Iturregui y su esposa como para Agudo Cano y su esposa. La sola garantía que como un sucesivo adquirente tenía era la de ser constituido en parte demandada y ser oído en juicio y de esa protección disfrutó plenamente, conforme a nuestra práctica civil, ante el tribunal de instancia y ante nos.

 Considerando todo lo hasta aquí expuesto se hace preciso concluir que a la fecha en que se dictó la sentencia sumaria recurrida, ante el tribunal de instancia, no había controversia real o genuina en cuanto a ningún hecho material de la acción de retracto legal de comuneros ejercitada y que la retrayente tenía un claro derecho a sentencia a su favor como cuestión de ley, procediendo que se dictara sumariamente sin necesidad de la celebración de un juicio ordinario en sus méritos.([25])

*La sentencia recurrida deberá modificarse en el sentido de decretarse en la misma que en la escritura pública que se otorgue por los demandados Ramón Agudo Cano y su esposa Raquel Baker, o en su caso por el alguacil del tribunal de instancia, trasmitiendo el título del condominio retraído a la demandante Juanita Zalduondo Díaz, se inserte el compromiso contraído a no vender dicho condominio dentro del tér-*

---

([25]) Repetimos que el único hecho que intentó negar el recurrente en su contestación fue el de que Iturregui era, al comprar a Milagros Zalduondo Cruz, un extraño a la comunidad. Sin embargo, *no negó esa condición al 3 de junio de 1955,* fecha de la primera compra. Se limitó a alegar "que en la fecha en que el demandado Nicolás Iturregui vendió al aquí interventor—22 de diciembre de 1955—dicho demandado—Iturregui no era un extraño a la comunidad." Ya hemos visto que nunca desapareció la condición de extraño de Iturregui. El ejercicio en tiempo de la acción vedó la posibilidad de convertirse en comunero antes de la segunda venta. El único motivo legal de oposición específicamente alegado contra la moción de sentencia sumaria—la prescripción de la "causa de acción . . . en contra del interventor"—es insostenible, puesto que nunca se ejercitó una nueva causa de acción contra Agudo Cano con motivo de la cesión pendente lite de la cosa retraída. Simplemente, como sucesor en el título y en la posesión de la cosa litigiosa, se le hizo parte demandada en sustitución del primitivo demandado, en una acción motivada por la primera venta, ejercitada en tiempo y en debida forma.

*mino de cuatro años y que de ese compromiso se tome razón en el Registro de la Propiedad con el fin de dar aviso a terceros, empezando a contarse dichos cuatro años desde la fecha de la inscripción del título que se otorgue en favor de la demandante y, así modificada, será confirmada.*

Se devolverá el caso al tribunal de instancia para que, con audiencia de las partes, determine y fije: (1) los gastos ocasionados por el primer contrato de venta celebrado el 3 de junio de 1955 y cualquier otro pago legítimo hecho para esa primera venta, y (2) los gastos necesarios y útiles hechos en la cosa vendida y retraída, debiendo la demandante satisfacer previamente al otorgamiento de esa escritura a la parte demandada o depositarlo en corte a disposición de esa parte, el monto de todos los gastos y pagos determinados y fijados por el tribunal de instancia.

El Juez Asociado Sr. Blanco Lugo no intervino.