EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Hilda A. Moreno Ramírez de Arellano<br><br>    Peticionaria<br><br>       v.<br><br>Alvin Szumlinski t/c/c<br>Alvin James Sumley<br><br>Ferdinand Morales Pereira, et al.<br><br>    Recurrido | Certiorari<br><br>2012 TSPR 179<br><br>187 DPR ____ |

Número del Caso: AC-2009-2

Fecha: 4 de diciembre de 2012

Tribunal de Apelaciones:

            Región Judicial de Fajardo

Abogada de la Parte Peticionaria:

            Lcda. Kimberly Fay Cupp-Moreno
            (Admisión por Cortesía)

Abogados de la Parte Recurrida:

            Lcdo. Jorge Díaz Aquino
            Lcdo. Jayson Ramos Pérez

Materia: Derechos Reales – Acción de Retracto de Comunero

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| HILDA A. MORENO RAMÍREZ DE ARELLANO<br><br>Peticionaria<br><br>v.<br><br>ALVIN SZUMLINSKI t/c/c ALVIN JAMES SUMLEY<br><br>**FERDINAND MORALES PEREIRA,** *et al.*<br><br>Recurrido | **Núm.: <u>AC-2009-002</u>** | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor FELIBERTI CINTRÓN

En San Juan, Puerto Rico, a 4 de diciembre de 2012.

A través del presente recurso nos expresamos sobre el requisito de escritura pública impuesto como exigencia formal a la compraventa de terrenos en común pro indiviso y cómo este imperativo estatutario incide en el término provisto para iniciar la acción de retracto legal de comunero.

I

El 19 de agosto de 1963 la Sra. Hilda A. Moreno Ramírez de Arellano (señora Moreno o la peticionaria) y el Sr. Alvin Szumlinski t/c/c Alvin Sumley (señor Sumley) terminaron su matrimonio mediante divorcio.

Posteriormente, otorgaron escritura pública sobre División Parcial de Sociedad de Gananciales mediante la cual acordaron liquidar todos sus bienes excepto una finca de cinco (5) cuerdas ubicada en el Municipio de Luquillo, Puerto Rico.[1]

En lo que concierne a la referida propiedad y conforme surge de la mencionada escritura, las partes pactaron gestionar ante la Junta de Planificación de Puerto Rico (Junta de Plantificación) la segregación en dos (2) lotes iguales. Asimismo dispusieron cuál pedazo de la propiedad en específico se le adjudicaría a la señora Moreno y cuál al señor Sumley de aprobarse la segregación según convenido. No obstante, a pesar de los trámites realizados ante la Junta de Planificación,[2] así como la Administración de Reglamentos y Permisos (A.R.Pe.)[3]

---

[1]    La parte recurrida argumenta en su Alegato que, conforme a los términos consignados en la escritura pública sobre División Parcial de Sociedad de Gananciales, la finca en controversia también fue objeto de la partición allí dispuesta. El tipo específico de comunidad de bienes existente entre la peticionaria y el Sr. Alvin Sumley (señor Sumley) para la fecha de la compraventa dependerá de si la propiedad objeto de este litigio fue o no objeto de liquidación previa como parte de la sociedad legal de gananciales compuesta por ambos. Véase BL Investment Inc. v. Registrador, 181 D.P.R. 5 (2011) y Vega Montoya v. Registrador, 179 D.P.R. 80 (2010).

[2]    No existe evidencia en autos a los efectos de que la Junta de Planificación de Puerto Rico (Junta de Planificación) autorizara definitivamente la división física de la finca en controversia. Únicamente constan documentos expedidos por dicha agencia el 27 de mayo de 1965 y el 20 de octubre de 1965, donde se le exige a los dueños construir un camino de acceso y preparar el correspondiente plano de inscripción dentro del término de un año como condición previa a la aprobación final de su solicitud de lotificación de la propiedad.

[3]    Aunque tanto en su Reconvención como en una carta fechada el 18 de julio de 2006 la parte recurrida alude a una supuesta aprobación de segregación expedida por la Administración de Reglamentos y Permisos (A.R.Pe.), el documento más reciente que obra en autos sobre este particular es precisamente una Notificación de Denegación de la A.R.Pe. notificada el 8 de julio de 2004 donde se deniega la Solicitud de Lotificación en dos (2) solares sometida a nombre del señor Sumley.

la segregación de la finca aparentemente nunca se concretizó.

Durante el año 2004, el señor Sumley vendió su participación en la finca al Sr. Ferdinand Morales Pereira (señor Morales o el recurrido).

Así las cosas, el 13 de diciembre de 2006 la Lcda. Kimberley Cupp-Moreno, hija de la peticionaria, recibió una carta suscrita por el abogado del señor Morales mediante la cual solicitó de la peticionaria que se pusiera en contacto con el señor Sumley a los fines de otorgar una escritura de rectificación de cabida de la propiedad antes mencionada. Unida a esta correspondencia, el letrado incluyó una carta suscrita por el señor Morales y dirigida a la señora Moreno con fecha de 18 de julio de 2006, la cual alegadamente había sido devuelta por el correo. En esa carta el recurrido recabó la ayuda de la peticionaria para poder identificar las colindancias de la finca, ya que el año anterior había comprado la participación del señor Sumley y estaba trabajando en el desmonte del terreno.[4]

Luego de que la peticionaria, por conducto de la licenciada Cupp-Moreno y mediante carta de 20 de diciembre de 2006, le notificara al señor Morales como al señor Sumley su deseo de ejercitar su derecho al retracto,

---

[4] La peticionaria alega que fue de este modo que se enteró, por primera vez, que el señor Sumley había vendido su participación en el terreno de la propiedad habida en común entre ellos.

presentó una Demanda[5] sobre retracto legal y daños y perjuicios.

La peticionaria reclamó daños y angustias mentales por la segregación unilateral gestionada por el señor Sumley, al igual que por la alteración de la finca ocasionada por la tala de árboles y vegetación, así como el movimiento de corteza terrestre sin previa autorización. Adujo, además, que a la fecha de la presentación de la Demanda no se le había provisto copia de la escritura de compraventa para conocer el precio y la fecha de ésta, a pesar de las conversaciones sostenidas entre la licenciada Cupp-Moreno y los señores Sumley y Morales.

Luego de varios trámites procesales, el 6 de diciembre de 2007, transcurrido casi un (1) año desde el inicio de la acción de retracto, el señor Morales sometió finalmente su Contestación a la Demanda. En la misma, el recurrido negó la alegación de la peticionaria de que advino en conocimiento de la venta el 15 de diciembre de 2006, puesto que ésta conocía de los trámites y detalles de la adquisición desde sus inicios, así como con posterioridad a la venta. Conjuntamente con su contestación, el recurrido presentó una Reconvención solicitando daños o, en la alternativa, el rembolso de las obras realizadas en la propiedad en cuestión. Como parte

---

[5]    La Demanda fue presentada el 22 de diciembre de 2006 ante el Tribunal de Primera Instancia, Sala de Fajardo.

de ésta, el señor Morales indicó que en unión a su esposa, la Sra. Leonor Escobar Maldonado, así como el Sr. Neftalí Ortiz Betancourt y su esposa, la Sra. Nilda Ortiz Olivero, al igual que sus respectivas sociedades de bienes gananciales, el 16 de abril de 2004 habían comprado al señor Sumley el cincuenta porciento (50%) de su participación en la finca. Alegó que la compraventa se llevó a cabo mediante documento privado otorgado ante el notario Antonio Ríos Acosta (*affidávit* 23,127), por el precio de cuarenta y dos mil quinientos dólares ($42,500.00).

Argumentó, además, que la peticionaria había renunciado a su derecho a ejercer el retracto, ya que al momento de instar la acción no había consignado el precio de venta, ni tampoco había prestado fianza alguna según requiere el Artículo 1407 del Código Civil, 33 L.P.R.A. sec. 3912 (1990) (Art. 1407 del Código Civil).

Con esa información, el 17 de diciembre de 2007 la señora Moreno solicitó al foro de instancia autorización para consignar la cantidad de cuarenta y dos mil quinientos dólares ($42,500.00) como parte de su acción de retracto. Indicó que no fue hasta que el recurrido presentó su Contestación a la Demanda que advino en conocimiento del precio de venta.

El 11 de septiembre de 2008, el tribunal de instancia denegó tanto la moción en oposición a la consignación como la moción de desestimación presentadas por el recurrido y,

por consiguiente, aceptó la consignación de la peticionaria.

Insatisfecho, el señor Morales acudió, oportunamente, ante el Tribunal de Apelaciones. El foro apelativo intermedio revocó el dictamen del tribunal de instancia y desestimó la acción de retracto legal de comuneros. Como fundamento para ello concluyó que, aun desconociendo el precio exacto, la peticionaria podía "prestar fianza por la cantidad aproximada de compraventa del inmueble" equivalente a cuarenta mil dólares ($40,000.00). Es decir, el monto de la alegada oferta que el señor Morales le hiciera al señor Sumley en el año 2002. Igualmente, determinó que, al no prestar la peticionaria la fianza estatutaria dentro del plazo fatal de nueve (9) días dispuesto en nuestro ordenamiento como término para iniciar este tipo de acción, había caducado su derecho al retracto.

La señora Moreno solicitó reconsideración de dicha determinación, pero la misma fue sostenida por el foro apelativo intermedio mediante Resolución emitida el 3 de diciembre de 2008.

Inconforme, la señora Moreno recurrió entonces ante este Foro planteando la comisión de cuatro (4) errores por parte de dicho tribunal.[6] En síntesis, la peticionaria señala como primer error que existe una controversia de

---

[6] Aunque la peticionaria acudió ante nosotros mediante recurso de apelación, por medio de nuestra Resolución de 12 de junio de 2009 acogimos el recurso como *certiorari* y expedimos el auto solicitado.

hecho respecto a cuándo ella tuvo conocimiento suficiente para ejercitar su acción de retracto, por lo que corresponde devolver el caso al foro primario para dilucidar este asunto. Como segundo y tercer error, cuestiona la desestimación de su acción de retracto por supuestamente no haber prestado fianza oportunamente, así como la determinación del Tribunal de Apelaciones al calcular el monto de la fianza, en su caso, a base de una oferta de compraventa efectuada años antes.[7] Por último, en su cuarto señalamiento de error, aduce que incidió el foro recurrido al desestimar en su totalidad la acción incoada a nivel de instancia, ya que en la Demanda se presentaron dos (2) reclamaciones separadas. Es decir, una para retrotraer la participación vendida al señor Morales, y otra en daños y perjuicios como resultado de las labores de limpieza realizadas por el comprador sobre la finca.

Con el beneficio de la comparecencia de ambas partes y estando en posición para resolver, procedemos a así hacerlo.

## II

## EL RETRACTO LEGAL

El Artículo 1411 del Código Civil, 31 L.P.R.A. sec. 3921 (1990), define la figura del retracto legal como "el

---

[7] Como veremos, y dado el resultado alcanzado, no será necesario que consideremos el segundo y tercer error alegados.

derecho de subrogarse, con las mismas condiciones estipuladas en el contrato, en lugar del que adquiere una cosa por compra o dación en pago".

Entre los diferentes tipos de retracto legal provistos en nuestro sistema de derecho, existe el retracto de comuneros. Es decir, el derecho de un copropietario de una cosa poseída en común de utilizar dicho mecanismo para recuperar lo vendido "en el caso de enajenarse a un extraño la parte de todos los demás condueños o alguno de ellos". Art. 1412 del Código Civil, 31 L.P.R.A. sec. 3922 (1990).

En términos generales, a través del retracto se implanta el enfoque adverso a la pluralidad de condueños que permea en nuestro ordenamiento. Ortiz Roberts v. Ortiz Roberts, 103 D.P.R. 628, 630 (1975). El retracto de comuneros "se basa[] sobre la existencia de una comunidad de bienes o derechos y responde[] al persistente propósito de sustituirla por el dominio singular…." Q. M. Scaevola, Código Civil, 2da ed., Madrid, Ed. Reus, S.A., 1970, T. XXIII, Vol. 2, pág. 441.

Este objetivo responde a que el estado de comunidad plantea un foco potencial de pugnas y conflictos. Así se ha reconocido al indicar que "'la comunión [] suele ser fuente perenne de discordias'". Noble v. Rodríguez, 69 D.P.R. 482, 485 (1949) (citando 4 Escriche, Diccionario de Legislación y Jurisprudencia, pág. 942, ed. 1876). Véase, además, Quiñones Quiñones v. Quiñones Irizarry, 91 D.P.R.

225, 268 (1964); Zalduondo v. Iturregui, 83 D.P.R. 1, 22 (1961). Las dificultades en el manejo que supone la copropiedad resultan obvias, pues se les exige a los miembros actuar de común acuerdo. Como es natural, conforme aumenta el número de titulares se ve menoscabada la flexibilidad decisional, elemento fundamental para todo desarrollo económico. De otra parte, la pluralidad de dueños puede dar pie a un fraccionamiento *de facto* donde se ve menguada la utilidad y productividad del predio. Es por ello que nuestro sistema de derecho favorece la reducción en el número de condóminos, dándole prioridad a éstos frente a un tercero. De este modo, se busca "fomentar el desarrollo de la propiedad, de la industria y de la riqueza, terminando con estados de comunidad cuya administración puede significar un obstáculo a ese desarrollo…". J. M. Manresa y Navarro, Comentarios al Código Civil Español, 6ta ed., Madrid, Ed. Reus, S.A., 1969, T. X, Vol. I, pág. 508. Véase, además, J. Santos Briz e I. Sierra Gil de la Cuesta, Tratado de Derecho Civil, Barcelona, Ed. Bosch, 2003, T. II, pág. 486; J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed., Barcelona, Ed. Bosch, 1983, T. III, Vol. III, pág. 405; L. Díez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed., Madrid, Ed. Tecnos, S.A., 1997, Vol. III, pág. 598.

Ahora bien, conforme hemos resuelto anteriormente, para que pueda dar curso una demanda de retracto de comunero, deben concurrir las siguientes condiciones:

1. La existencia de una comunidad de bienes y que sea un copropietario quien inicie la acción.

2. La presentación de la demanda dentro del periodo de nueve (9) días desde la inscripción de la venta en el registro o desde que el retrayente adviene en conocimiento de la venta.

3. La consignación del precio estipulado de la venta simultáneamente con la presentación de la demanda de ser conocido, en su defecto, dar fianza de consignarlo luego que le sea conocido.

4. El compromiso del retrayente de no vender la participación dominical que retraiga por un periodo de cuatro (4) años.[8]

Fuertes v. Arzón, 81 D.P.R. 491, 497-498 (1959); Zalduondo v. Iturregui, *supra*, pág. 11 n. 5.

Es menester destacar la importancia que guarda el cumplimiento cabal con los requisitos estatutarios impuestos como condición al ejercicio del retracto. Este enfoque de aplicación restrictiva del derecho se encuentra plenamente justificado si advertimos que la acción de retracto resulta inherentemente contraria al libre intercambio de bienes. Es por ello que nuestro ordenamiento ha fijado ciertas condiciones ineludibles con el fin de atemperar los efectos resultantes de este proceso en los derechos de las partes concernidas. La potestad de ejercer el retracto se considera como un

---

[8] Conforme establece nuestro Código Civil en su Artículo 1415, 31 L.P.R.A. sec. 3925 (1990), el comunero retrayente debe comprometerse a no vender la participación retraída por un término de cuatro (4) años. Esta limitación temporal evita que se utilice el mecanismo de retracto para fines especulativos. Quiñones Quiñones v. Quiñones Irizarry, 91 D.P.R. 225 (1964); Zalduondo v. Iturregui, 83 D.P.R. 1 (1961); Noble v. Rodríguez, 69 D.P.R. 482 (1949).

privilegio que afecta los derechos de propiedad de un adquirente, por lo que no admite ningún tipo de flexibilidad en sus términos. "Así lo demanda… la misma naturaleza del derecho de retracto, que por ser una condición resolutoria o limitativa del derecho de propiedad, exige una interpretación restrictiva y no extensiva de las disposiciones que lo regulan." Felici v. Ribas, *et al.*, 11 D.P.R. 539, 545 (1906).

Cónsono con lo anterior, el retrayente cuenta con un periodo de tiempo relativamente corto para presentar su demanda. Nuestro Código Civil expresamente dispone que la acción de retracto debe de iniciarse dentro del término "de nueve (9) días contados desde la inscripción en el registro, y en su defecto, desde que el retrayente hubiera tenido conocimiento de la venta". Art. 1414 del Código Civil, 31 L.P.R.A. sec. 3924 (1990) (Artículo 1414 del Código Civil). No cabe duda que este término es uno fatal e improrrogable. "La acción de retracto se ha de ejercitar dentro de un término perentorio. La marcha normal del comercio jurídico lo pide así; porque nada tan perturbador para una buena economía de la propiedad como la incertidumbre en los derechos dominicales…." Q.M. Scaevola, op. cit., T. XXIII, Vol. 2, pág. 551.

Sobre este particular, otros tratadistas españoles coinciden que, igualmente, reconocen su naturaleza perentoria como principio de derecho indiscutible. "Hoy unánimemente la doctrina lo considera de caducidad, de

suerte que el retracto legal es un derecho que debe ejercitarse precisamente en el plazo legal, el cual tiene por ello naturaleza sustantiva y no admite interrupción ni ampliación de ninguna clase…." G. García Cantero, en M. Albaladejo y S. Díaz Alabart, Comentarios al Código Civil y Compilaciones Forales, 2da ed., Madrid, Revista de Derecho Privado, 1991, T. XIX, pág. 679. Véase, además, P. González Poveda, en I. Sierra Gil de la Cuesta, Comentario del Código Civil, Barcelona, Ed. Bosch, 2000, T. 7, pág. 490; J. Santos Briz, Derecho Civil, Madrid, Ed. Revista de Derecho Privado, 1973, T. II, págs. 724-725; J. Puig Brutau, op. cit., págs. 414-415; J. Santamaría, Comentarios al Código Civil, Madrid, Revista de Derecho Privado, 1958, pág. 556.

## III

## EXIGENCIA DE ESCRITURA PÚBLICA

De otra parte, los tratadistas coinciden en que el mero perfeccionamiento del contrato mediante el cual las partes han convenido estrictamente en lo atinente al objeto y al precio de venta no es suficiente para poder ejercitar la acción de retracto.[9] Ello responde a que, bajo este supuesto, la propiedad aún no ha pasado a formar

---

[9] Véase el Artículo 1339 del Código Civil, 31 L.P.R.A. sec. 3746 (1990), el cual dispone:

> La venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni el otro se hayan entregado.

parte del patrimonio del comprador y, en caso de incumplimiento, éste únicamente tendrá disponible una acción para obligar a la parte que falló en sus obligaciones a ejecutar lo pactado.

Por ende, el inicio del plazo para el ejercicio del derecho de retracto implica que la venta en cuestión se tiene que haber consumado con la correspondiente transferencia de la propiedad a manos de un tercero. Este principio ha sido reiterado por el Tribunal Supremo de España y su razonamiento aparece expresado de la siguiente manera:

> [L]a consumación lesiona en forma más viva y eficaz que la perfección del derecho de preferencia del retrayente, y en este sentido debe entenderse que el agravio efectivo y firme no se produce mientras el comprador es sólo titular de un derecho personal, aunque con vocación al dominio de la finca, sino que la lesión definitiva se causa al adquirir el comprador la cualidad de dueño por la concurrencia en su favor del título y del modo o tradición de la cosa vendida….

Q. M. Scaevola, op. cit., T. XXIII, Vol. 2, pág. 558, Sentencia de 20 de mayo de 1943. Véase, además, G. García Cantero, en M. Albaladejo y S. Díaz Alabart, op. cit., págs. 681-682; J. M. Manresa y Navarro, op. cit., T. X, Vol. I, págs. 537-538; J. Santos Briz e I. Gil de la Cuesta, op. cit., pág. 490; J. Santos Briz, op. cit., pág. 725; J. Puig Brutau, op. cit., págs. 410-414; J. Santamaría, op. cit., págs. 556-558.

A lo anterior debemos añadir que, como parte de nuestro esquema normativo, en el año 1998 se agregó una

disposición específica al Código Civil que exige el otorgamiento de escritura pública en casos de compraventa de terrenos propiedad de una comunidad de bienes. A esos efectos, la Ley Núm. 193-1998 añadió, al mencionado cuerpo legal, el Artículo 330-A, 31 L.P.R.A. sec. 1275a (Supl. 2011) (Artículo 330-A del Código Civil), mediante el cual taxativamente se fija el cumplimiento con esta formalidad como condición previa a la validez de este tipo de negocio jurídico. En el articulado antes mencionado se detallan, además, otros requisitos con los que deben cumplir las partes para hacer efectiva la adquisición. Así pues, el Artículo 330-A del Código Civil, dispone:

> Para que sea **válida** la compraventa de terrenos en común pro indiviso, la misma deberá efectuarse mediante **escritura pública** en la cual se hará constar la porción o participación en común pro indiviso que le corresponde al comprador, las **advertencias legales** correspondientes y la aceptación del comprador de adquirir en tal capacidad.

(Énfasis suplido).

Esta legislación respondió a la condición precaria en que se encontraban la mayoría de los adquirentes de esta modalidad de propiedad, los cuales no contaban con el debido asesoramiento previo a la compra o eran inducidos al trámite mediante engaño. De esta manera, se impusieron las restricciones antes descritas con el fin de proteger a las víctimas potenciales de vendedores inescrupulosos y, a la vez, detener su proliferación. Exposición de Motivos de la Ley Núm. 193-1998.

Recapitulando, conforme lo antes reseñado, para que comience a decursar el término provisto para presentar la acción de retracto es indispensable que el referido negocio jurídico se haya elevado a escritura pública para hacer efectivo el traspaso. Es este el único modo en que el retrayente podrá legítimamente subrogarse en el lugar del comprador conforme exige la figura del retracto ya que, de omitirse esta exigencia de forma, a lo único que podría aspirar el alegado retrayente sería a estar en posición de requerirle al vendedor cumplir con lo previamente pactado con el comprador. A falta de escritura pública, el retrayente no estaría ocupando el lugar del comprador en calidad de dueño de la participación correspondiente en la propiedad, condición intrínseca para que pueda operar el retracto. Cabe recordar que "[l]os efectos del retracto legal consisten fundamentalmente en obtener la subrogación del retrayente en el lugar del comprador de la cosa afecta a aquel derecho…." J. Santos Briz e I. Gil de la Cuesta, op. cit., pág. 491. En virtud del retracto, el que ejerce este tipo de acción se subroga en todos los derechos y obligaciones del comprador. Implica ello que la propiedad tiene que haber pasado al patrimonio del comprador, cosa que, bajo nuestro sistema de derecho vigente, es imposible en el caso de propiedades en común pro indiviso sin que medie una escritura pública.

Resolvemos, por ende, que de no mediar este requisito estatutario la venta de terrenos en común pro indiviso no se considerará válida en derecho.[10] Bajo este supuesto, no comenzará a discurrir el término de nueve (9) días provisto en el Código Civil para ejercitar el retracto legal, como tampoco se activará el requisito de prestación de fianza.

## IV

La peticionaria alega en su Demanda, así como en los documentos sometidos en el presente recurso, que previo a iniciar esta acción y mediante la carta que alegadamente recibió el 13 de diciembre de 2006, fue notificada de una supuesta compraventa celebrada en años anteriores entre el recurrido y el señor Sumley. Indica también que, a pesar de sus gestiones afirmativas sobre este particular antes de instar el proceso judicial, nunca fue informada de la fecha exacta de la alegada venta y traspaso, como tampoco se le informó el nombre de los compradores, ni el precio de venta. Aduce que es en la Contestación a la Demanda presentada por el recurrido que por primera vez adviene en conocimiento de la información.

---

[10] Esta transacción deberá ajustarse a su vez a lo dispuesto en <u>BL Investment Inc. v. Registrador</u>, *supra*, y <u>Vega Montoya v. Registrador</u>, *supra*. Así pues, aun asumiendo que la compraventa se efectuó mediante escritura pública, dependiendo del estatus de la comunidad postganancial a esa fecha podía el señor Morales comprar ya fuese "*una cuota abstracta sobre la antigua masa ganancial*", es decir, sobre la totalidad de la finca, o "*una cuota concreta*" de la misma. <u>BL Investment Inc. v. Registrador</u>, *supra* (énfasis en el original). En otras palabras, adquirir el porciento específico adjudicado al señor Sumley como resultado de tal liquidación.

Por su parte, en su Contestación a la Demanda, el señor Morales reveló el precio pagado por éste y se limitó a negar las alegaciones aducidas por la peticionaria correspondientes a la falta de conocimiento oportuno de la transacción. Aunque en su Reconvención identificó a los cuatro (4) compradores de la participación del señor Sumley, no hizo referencia alguna a que se haya otorgado escritura pública. Simplemente, informó que se adquirió la aludida participación en la finca "según documento privado de compraventa de 16 de abril de 2004, en Fajardo, Puerto Rico, reconocido ante el Notario Antonio Ríos Acosta [mediante] (affidávit 23,127)".

No figura en autos que la compraventa objeto de este recurso conste en escritura pública según requiere el Artículo 330-A del Código Civil. La única referencia concerniente a algún tipo de formalidad relacionada a la compraventa surge de la Reconvención del señor Morales donde meramente se hace alusión a un *affidávit*. Por tanto, concluimos que se cometió el primer error indicado por la peticionaria según señalamos al comienzo de esta Opinión. En consecuencia, resulta indispensable que el tribunal de instancia indague, primeramente, si se concretizó una compraventa válida de la participación del señor Sumley en la finca en cuestión antes de poder resolver si la acción de retracto y la prestación de fianza estuvieron en tiempo. Es decir, si existe la correspondiente escritura pública.

De la parte recurrida no poder demostrar la existencia de una escritura pública mediante la cual se haya realizado la compraventa del interés del señor Sumley en el inmueble objeto del caso de autos, procederá entonces que se desestime la acción de retracto esgrimida por la señora Moreno en la Demanda de epígrafe. Ello es así ya que, en estricto derecho, no habrá ocurrido una transferencia de dominio respecto al inmueble en cuestión, por lo cual la peticionaria continuará como propietaria en común pro indiviso de dicho inmueble conjuntamente con su ex-esposo.

En la eventualidad de que la compra por parte del señor Morales haya cumplido con las exigencias formales antes reseñadas previo a la presentación de la acción de retracto de la señora Moreno, corresponderá entonces al Tribunal de Primera Instancia celebrar una vista evidenciaria para determinar en qué momento preciso la peticionaria tuvo conocimiento suficiente de la venta para que comenzaran a discurrir los nueve (9) días fijados para ejercitar su acción de retracto.

**V**

Atendido el asunto relacionado a la acción de retracto interpuesta por la peticionaria, corresponde considerar el cuarto y último error esbozado en el recurso. A través de éste, la señora Moreno alega que el Tribunal de Apelaciones incidió al desestimar por completo

las reclamaciones consagradas en su Demanda. No obstante, basta con señalar que en su dictamen dicho foro nada dispuso en cuanto a las otras causas de acción aparte del retracto. De hecho, la reclamación en daños y perjuicios no fue objeto de la revisión presentada ante el tribunal apelativo intermedio. Surge claramente que la determinación recurrida se circunscribió a resolver única y exclusivamente si procedía el retracto de comuneros instado por la señora Moreno. Tampoco se hace alusión alguna a las alegaciones atinentes a las alteraciones efectuadas por el señor Morales en la finca y a los daños aducidos por la señora Moreno como parte de su Demanda. Por tanto, la causa de acción por daños y perjuicios presentada por la peticionaria se mantuvo intacta, a pesar de la desestimación de su reclamación de retracto de comunero.

Cónsono con lo anterior, resolvemos que no se cometió el cuarto error según consignado por la peticionaria.

## VI

En mérito de lo antes expuesto, se *revoca* la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores a tenor con lo aquí resuelto.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| HILDA A. MORENO RAMÍREZ DE ARELLANO<br><br>Peticionaria<br><br>v.<br><br>ALVIN SZUMLINSKI t/c/c ALVIN JAMES SUMLEY<br><br>**FERDINAND MORALES PEREIRA**, *et al.*<br><br>Recurrido | **Núm.:** <u>AC-2009-002</u> |

SENTENCIA

En San Juan, Puerto Rico, a 4 de diciembre de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se *revoca* la Sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores a tenor con lo resuelto por este Tribunal.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre con la siguiente expresión:

El Juez Presidente señor Hernández Denton concurre con el resultado de la Opinión mayoritaria por entender que se soslaya la controversia medular del caso, a saber, cuál es la interpretación correcta del Art. 1407 del Código Civil que establece que: "[p]ara que pueda darse curso a las demandas de retracto se requiere que se consigne el precio si es conocido, o si no lo fuere, que se dé fianza de consignarlo luego que lo sea". 31 L.P.R.A. sec. 3912.

Como en las acciones de retracto legal la fianza es una obligación dispuesta por el Código Civil como requisito para que se pueda iniciar

el proceso judicial, a nuestro entender la controversia inicial que este Tribunal debió atender era si la señora Moreno cumplió con esta exigencia. Dependiendo de lo anterior, el foro primario hubiera tenido que desestimar la acción de retracto o continuar dilucidando el resto de los requisitos exigidos para este tipo de acción. Solo en la eventualidad de que la acción de retracto procediera es que el Tribunal de Primera Instancia tendría que analizar la validez del negocio jurídico.

La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. La Jueza Asociada señora Pabón Charneco no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo